No. 17-1918

---

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

ANTHONY MIMMS, M.D.,
Plaintiff-Appellee,

v.

CVS PHARMACY, INC.,
Defendant-Appellant.

---

Appeal From The United States District Court
For the Southern District of Indiana,
Indianapolis Division
Case No. 1:15-cv-00970-TWP-MJD
The Honorable Judge Tanya Walton Pratt

---

BRIEF AND REQUIRED SHORT APPENDIX OF
DEFENDANT-APPELLANT CVS PHARMACY, INC.

---

Alice M. Morical
Amanda L.B. Mulroony
HOOVER HULL TURNER LLP
111 Monument Circle, Suite 4400
P.O. Box 44989
Indianapolis, IN 46244-0989
amorical@hooverhullturner.com
amulroony@hooverhullturner.com
317-822-4400 (telephone)
317-822-0234 (facsimile)

Attorneys for the
Defendant-Appellant, CVS Pharmacy, Inc.

## RULE 26.1 DISCLOSURE STATEMENT

Appellant/Defendant CVS Pharmacy, Inc. is represented by Hoover Hull Turner LLP and was also represented by Foley & Lardner, LLP in the district court proceedings below. CVS Pharmacy, Inc. is a wholly-owned subsidiary of CVS Health Corporation. CVS Health Corporation is a publicly-traded corporation.

s/ Alice M. Morical
Alice M. Morical

## RULE 26.1 DISCLOSURE STATEMENT

Appellant/Defendant CVS Pharmacy, Inc. is represented by Hoover Hull Turner LLP and was also represented by Foley & Lardner, LLP in the district court proceedings below. CVS Pharmacy, Inc. is a wholly-owned subsidiary of CVS Health Corporation. CVS Health Corporation is a publicly-traded corporation.

s/ Amanda L.B. Mulroony
Amanda L.B. Mulroony

REQUEST FOR ORAL ARGUMENT

CVS Pharmacy, Inc. requests oral argument, which it believes would assist the Court in resolving this appeal.

TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENT .................................................................. i

REQUEST FOR ORAL ARGUMENT ........................................................... ii

TABLE OF CONTENTS ............................................................................ iii

TABLE OF AUTHORITIES ........................................................................ v

JURISDICTIONAL STATEMENT .............................................................. 1

STATEMENT OF THE CASE ...................................................................... 4

      A.   *The Parties* ....................................................................... 5

      B.   *Pretrial Proceedings* ........................................................ 7

      C.   *Trial and Orders Excluding Evidence During Trial* ......................... 11

SUMMARY OF ARGUMENT ...................................................................... 22

STANDARDS OF REVIEW .......................................................................... 23

ARGUMENT ................................................................................................. 24

I.    The court erroneously denied CVS's motion for summary judgment based on an incorrect application of law regarding imputed knowledge for actual malice, erroneously allowed imputation evidence at trial, and erroneously instructed the jurors regarding "ill will" as it relates to actual malice ............ 24

      A.   *The court erred in denying summary judgment on the issue of actual malice.* ............................................................... 24

B.     *The court compounded its legal error regarding imputation of corporate speakers' knowledge at trial by admitting such evidence over CVS's objection.* ............................................................ 28

C.     *The court incorrectly stated the law on actual malice when instructing jurors that "ill will" evidence was sufficient to meet Plaintiff's burden.* ................................................................ 30

II.     The district court abused its discretion in excluding evidence of Mimms' credibility, his poor reputation, and CVS's defense of truth. ........................... 32

A.     *Exclusion of evidence of Mimms' false interrogatory response prevented CVS from challenging Mimms' credibility.* ...................... 33

B.     *Exclusion of mitigating circumstances evidence of Mimms' poor reputation was erroneous.* ................................................................ 36

C.     *The district court committed reversible error by excluding evidence critical to CVS's defense of truth.* ....................................................... 39

III.     The district court committed reversible error when it refused to give a supplemental jury instruction to correct jurors' confusion regarding attorneys' fees as damages. ................................................................. 46

CONCLUSION ................................................................................................... 48

CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1) ...................................... 50

CERTIFICATE OF COMPLIANCE WITH RULE 30(d) ........................................... 50

PROOF OF SERVICE ......................................................................................... 51

iv

## TABLE OF AUTHORITIES

**Cases**

*Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110 (Ind. Ct. App. 2008).... 26

*Branham v. Celadon Trucking Svs., Inc.,* 744 N.E.2d 514 (Ind. Ct. App. 2001)....... 40

*Brewington v. State*, 7 N.E.3d 946 (Ind. 2014) ..................................................... 25, 31

*Browning-Ferris Indus. of Ill., Inc. v. Ter Maat*, 195 F.3d 953 (7th Cir. 1999)......... 26

*Carson v. Palombo*, 18 N.E.3d 1036 (Ind. Ct. App. 2014) ......................................... 48

*Cerabio v. Wright Med. Tech., Inc.*, 410 F.3d 981 (7th Cir. 2005)............................. 46

*Chu v. Am. Airlines, Inc.*, 285 F.3d 756 (8th Cir. 2002) ............................................ 47

*Conley v. Very*, 450 F.3d 786 (8th Cir. 2006) ............................................................ 47

*Dongguk Univ. v. Yale Univ.*, 734 F.3d 113 (2d Cir. 2013) ....................................... 26

*Dugan v. Mittal Steel USA, Inc.*, 929 N.E.2d 184 (Ind. 2010) ............................ 24, 37

*FDIC v. St. Paul Fire and Marine Insurance Co.*, 942 F.2d 1032
   (6th Cir. 1991) .................................................................................................. 43

*Flotech, Inc. v. E.I. Du Pont de Nemours & Co.*, 814 F.2d 775 (1st Cir. 1987).......... 27

*Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 425 n.12 (7th Cir. 2015) 35

*Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198 (7th Cir. 1989)........................... 42

*Hall v. Flannery*, 840 F.3d 922 (7th Cir. 2016) ........................................................ 30

*Heeb v. Smith*, 613 N.E.2d 416 (Ind. Ct. App. 1993)................................................ 42

*Henrichs v. Pivarnik*, 588 N.E.2d 537 (Ind. Ct. App. 1992)...................................... 37

*Holbrook v. Harman Auto., Inc.*, 58 F.3d 222 (6th Cir. 1995)................................... 26

*Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017) ................................................. 23

*Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815 (7th Cir. 2016) ............... 23

*Leon v. Caterpillar Indus., Inc.*, 69 F.3d 1326 (7th Cir. 1995).................................. 23

*Love v. Rehfus*, 946 N.E.2d 1 (Ind. 2011) .................................................... 31

*Marcone v. Penthouse Int'l Magazine For Men*, 754 F.2d 1072 (3d. Cir. 1985) ... 38, 39

*Nat'l Steel Erection v. Hinkle*, 541 N.E.2d 288 (Ind. Ct. App. 1989) ........................ 32

*Nelson v. City of Chicago*, 810 F.3d 1061 (7th Cir. 2016) ............................................ 33

*Poyser v. Peerless*, 775 N.E.2d 1101 (Ind. Ct. App. 2002) ......................................... 25

*Pub. Serv. Co. of Ind., Inc. v. Bath Iron Works Corp.*, 773 F.2d 783
   (7th Cir. 1985) ................................................................................................ 33, 44

*Riordan v. Kempiners*, 831 F.2d 690 (7th Cir. 1987) ................................................... 46

*Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678 (7th Cir. 2006) .............................. 47

*Schultz v. Thomas*, 832 F.2d 108 (7th Cir. 1987) ....................................................... 35

*Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 605 (7th Cir. 1985) ...................... 35

*Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825 (Ind. 2011) ................................ 48

*Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735 (7th Cir. 2016) .................... 23

*Thompson v. City of Chicago*, 722 F.3d 963 (7th Cir. 2013) ....................................... 33

*United States v. Higgins*, 362 F.2d 462 (7th Cir. 1966) .............................................. 35

*United States v. Whitmore*, 359 F.3d 609, 619 (D.C. Cir. 2004) ................................ 35

*Wal-Mart Stores, Inc. v. Wright*, 774 N.E.2d 891 (Ind. 2002) .............................. 23, 32

*Whitehead v. Bond*, 680 F.3d 919 (7th Cir. 2012) .................................................. 24, 39

## Statutes

21 C.F.R. § 1306.04 .................................................................................................. 5, 9

28 U.S.C. § 1291 .......................................................................................................... 1

28 U.S.C. § 1332 .......................................................................................................... 1

Indiana Code § 34-15-1-2 .......................................................................................... 37

## Other Authorities

75A Am. Jur. 2d Trial § 603 (2017) ............................................................................ 35

**Rules**

Fed. R. Evid. 403 ........................................................................................ 36

Fed. R. Evid. 608(b) ................................................................................... 35

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). CVS Pharmacy, Inc. ("CVS") is a corporation organized under the laws of Rhode Island, with its principal place of business in Woonsocket, Rhode Island. For purposes of diversity jurisdiction under 28 U.S.C. § 1332, CVS is a citizen of Rhode Island. Anthony Mimms, M.D. ("Mimms") is a resident of Indianapolis, Indiana. For purposes of diversity jurisdiction under 28 U.S.C. § 1332, Mimms is a citizen of Indiana.[1] The amount in controversy exceeded $75,000.

The United States Court of Appeals for the Seventh Circuit has appellate jurisdiction of this matter pursuant to 28 U.S.C. § 1291. CVS appeals from (1) the Final Judgment and Jury Verdict awarded on March 31, 2017 (SA000071-74), and from rulings adverse to CVS incorporated therein; (2) those portions of the Order on Defendant's Second Motion for Partial Reconsideration entered March 15, 2017 (SA000059-70), those portions of the Entry on Motion for Partial Reconsideration entered February 23, 2017 (SA000028-38), and those portions of the Entry on Pending Motions entered January 3, 2017 (SA00001-27), which denied summary judgment for CVS on the element of actual malice; and (3) all interlocutory orders leading thereto, including motions *in limine* addressing Mimms' imputation evidence, false interrogatory, mitigating circumstances, and evidence of truth

---

[1] Dismissed Plaintiff Mimms Functional Rehabilitation, P.C. ("MFR") is an Indiana Professional Corporation, organized under the laws of the State of Indiana, with its principal place of business in Indianapolis, Indiana. For purposes of diversity jurisdiction under 28 U.S.C. § 1332, MFR is a citizen of Indiana.

entered on February 23, 2017. (SA000039-58)  CVS timely filed its Notice of Appeal

on May 1, 2017. There are no prior or related appellate proceedings in this case. The

appeal is from a final judgment that disposed of all parties' claims.

## STATEMENT OF THE ISSUES

(i)     Did the district court commit an error of law denying CVS summary

judgment as to actual malice by imputing knowledge from an independent

corporate employee to each alleged pharmacy speaker?

(ii)    Did the district court erroneously allow Mimms to admit evidence of and

argue that knowledge of independent corporate employees may be

imputed to the speakers for the purpose of proving actual malice?

(iii)   Did the district court erroneously refuse to correctly instruct the jury on

actual malice?

(iv)    Did the district court erroneously exclude evidence relating to: (1) Mimms'

credibility where he falsely answered an interrogatory that he had never

been investigated or disciplined; (2) mitigating circumstances of Mimms'

poor professional reputation overall; and (3) truth that Mimms himself

was the subject of the Drug Enforcement Agency's ("DEA") investigation?

(v)     Did the district court erroneously fail to correct the jurors' mistaken belief

that Mimms' attorneys' fees could be considered as damages, after the

jury asked during its deliberations whether "we [are] allowed to ask for

legal fees to be reimbursed?"

## STATEMENT OF THE CASE

This is an appeal from a jury verdict in a defamation action brought by pain management practitioner Mimms against CVS. At all relevant times, Mimms was one of the highest prescribers of opioids—*e.g.* oxycodone and hydrocodone—in Indiana and surrounding regions. Mimms' prescribing habits made him known to CVS pharmacy representatives. They have an obligation to review and, in certain cases, refuse to fill controlled substance prescriptions if they believe the prescriptions were not issued for a legitimate medical purpose.

This case arises from four interactions between Mimms' patients and CVS pharmacy employees that occurred in the context of discussing prescriptions written by Mimms for opioids and other controlled substances. Mimms alleged that CVS pharmacy employees defamed him by comparing Mimms to a "pill mill," saying he was "under investigation by the DEA," saying he "went to jail," and saying he was or was about to be "arrested."

Indiana law requires a defamation plaintiff such as Mimms to prove actual malice by clear and convincing evidence. The Indiana Supreme Court has described the actual malice standard as a very high one that requires a plaintiff to prove the speaker *actually doubted* the truth of his or her assertion. At summary judgment and continuing to trial, the judge effectively lowered this standard by allowing Mimms to prove actual malice by imputing the knowledge of corporate-office CVS employees to the frontline CVS pharmacy employees who allegedly made the defamatory statements. Instead of proving the *speakers* actually doubted the

statements, Mimms focused on actions and knowledge of CVS employees who did not make the statements or have direct contact with any of the speakers.

A trial, the court then made multiple evidentiary rulings that denied CVS the opportunity to challenge Mimms' credibility as a witness, provide evidence to rebut or reduce Mimms' damages, and prove the truth of the statement that Mimms was under investigation by the DEA.

Finally, when the jury asked the court during deliberations if it may include Mimms' attorneys' fees in an award, which as a matter of law it could not, the trial court refused to instruct the jury that it may not consider attorneys' fees. The jury then awarded Mimms $1,025,000 in presumed damages where Mimms' medical practice continued to thrive, his patients who heard the statements testified they did not tell anyone other than family, they continued to see Mimms, and the statements did not change their opinions of Mimms.

A. *The Parties*

1. *CVS*

CVS is a pharmacy health care provider. Under the Controlled Substances Act, the responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a "corresponding responsibility" rests with the pharmacist who fills the prescription. 21 C.F.R. § 1306.04. Most patients are legitimately prescribed controlled substances because they have a legitimate medical need for the medications that are prescribed to them, but some doctors have written prescriptions without a legitimate basis. (A000595, A000612,

A000624, A000687-A000688, A001209-A001217)[2] As such, CVS pharmacists review controlled substance prescriptions, and if they believe that a prescription has not been written for a legitimate medical purpose, they are obligated to refuse to fill the prescription. CVS further authorizes its pharmacists to suspend filling all controlled substance prescriptions from practitioners who are not believed to be issuing their prescriptions for legitimate medical purposes in the course of a valid doctor/patient relationship. (A000584, A000615, A000641, A000645-A000646, A000941-A000947, A001218-A001220)

CVS has policies and guidelines to guide pharmacy staff through their jobs. One applies to refusal-to-fill conversations and states that pharmacy staff should not provide explanations to patients about the refusal to fill, and specifically directs pharmacy staff not to say that the prescriber is under investigation by the DEA or has been arrested. (A001209-A001217, A000595-A000599) Ultimately, the policies and guidelines emphasize that patient health comes first. (A000689-A000691, A001104-A001114, A001115-A001120, A001244-A001245)

2. *Anthony Mimms*

Anthony Mimms is a pain management doctor who was the highest prescriber of hydrocodone in Indiana in late 2013, (A001221, A000622-A000623, A00627-A000630, A000647-A000649, A000692), and continued to be a high prescriber of opioids through 2015. (A000648-A000654) At Rehabilitation Associates of Indiana ("RAI"), where he worked as a physician, Mimms prescribed controlled

---

[2] "A__" refers to the separate appendix. "SA__" refers to the short appendix bound with this brief.

substances to about 80 percent of his patients. (A000773) Mimms resigned from RAI

on November 6, 2013, after being placed on administrative leave, and subsequently

formed his own pain management practice, Mimms Functional Rehabilitation.

(A000753-A000755, A000786, A001006) Following Mimms' resignation, RAI filed a

complaint with the Indiana Attorney General raising three issues: (1) the

circumstances surrounding Mimms' placement on administrative leave; (2) Mimms'

wrongful use of an RAI prescription pad after his departure from the practice; and

(3) a patient's complaint of Mimms' inappropriate conduct (the "RAI AG

Complaint"). (A001071-A001087, A001088-A001091, A000741-A000745, A001006-

A001010)

B. *Pretrial Proceedings*

In May 2015, Mimms sued CVS for defamation. Both parties filed cross

motions for summary judgment, but only the denial of CVS's motion on actual

malice is the subject of this appeal.

1. *Summary Judgment Motions*

CVS moved for summary judgment on the nine statements Mimms alleged as

defamatory based on lack of evidence of actual malice for each speaker. (Dkt. 74;

Dkt. 113 pp. 27-30) Mimms designated no evidence as to eight of the nine speakers;

and the designated evidence with respect to the ninth speaker was that she had

been provided information from a co-worker to support her belief as to the truth of

her statement. (A000021, A000161)

On January 3, 2017, the court entered an order on the parties' cross-motions. The court concluding that the heightened actual malice applied, but then cited federal authority, rather than Indiana authority, to define it. The court found material issues of fact as to actual malice on eight statements, and that Mimms conclusively established actual malice on one statement. (SA000017-000018)

2. *CVS Reconsideration Motions and Alleged Statements Proceeding to Trial*

On January 25, 2017, CVS asked the court to reconsider the issue of actual malice and grant summary judgment in favor of CVS in its entirety.

CVS argued that the court applied the incorrect actual malice standard under Indiana law, which requires a showing that the speaker *in fact* entertained serious doubts as to the truth of a statement, and instead applied an objective negligence standard, where mere negligence or failure to investigate could suffice. (Dkt. 151 pp. 3-5)

On February 23, 2017, the court granted the motion in part and entered summary judgment in favor of CVS as to five of the nine statements based on lack of actual malice, after incorrectly concluding that CVS had sought reconsideration as to *only* those five statements. (SA000028-SA000034) The court entered summary judgment for CVS on those five statements "because there [was] no direct, indirect, or circumstantial evidence denoting the employees' state of mind." (SA000033-SA000034)

The court found that the following statements would proceed to trial (collectively, the "Trial Statements") (SA000037):

(1) Sometime in "maybe 2013," a Rushville pharmacy technician named Dana told Mimms' patient Kim Petro that CVS would not fill a prescription because Mimms "went to jail" (the "Petro Jail Statement"), (A000033, A000039, A000040, A000079);[3]

(2) Around June 26, 2014, a Greenfield CVS pharmacist named Tony said his store would not fill for Mimms "or any other pill mills" when Mimms' patient Terry McIntosh solicited information from the pharmacist relating to his controlled substance prescription medications (the "McIntosh Pill Mill Statement"), (A000026-A000028);

(3) Sometime before October of 2014, a Pendleton Pike pharmacy technician named Alexis told Mimms' patient Judith Mason that "Dr. Mimms was under investigation with the DEA" (the "Mason DEA Statement"), (A000011-A000012, A000015); and

(4) On March 4, 2015, either a McCordsville pharmacist or a pharmacy technician who was male, Caucasian, with dark hair and a lean build, told Mimms' patient Deborah Doyle-Blanton that Mimms had been "arrested for controlled substances, and if he wasn't, he's about to be" (the "Doyle-Blanton Arrested Statement"), (A000003, A000005-000006).

On February 28, 2017, CVS filed a motion to partially reconsider the court's order, to correct the court's misunderstanding that CVS's prior motion sought reconsideration as to *only* five statements. (Dkt. 222 pp. 1-2) CVS argued that summary judgment should be entered in its entirety because the designated evidence was the same for all statements; there was no evidence of actual malice for any alleged speaker; and there was no basis as a matter of law to treat the remaining statements differently. (*Id.* at 1-5) Mimms filed a response in opposition that quoted from an undesignated trial exhibit and argued that because Rhode

---

[3] As further detailed in the Parties' contemporaneously-filed stipulation, the name of the Trial Statement witnesses were redacted in the summary judgment filings to protect their identity at that early stage. The identity of those four witnesses were later included in public orders, filings and via their respective testimony in open court. Since there is no longer a need to keep their identity out of the public record, to assist the Court in its review, the names have been identified with corresponding appendix citations in the table of contents filed by CVS.

Island corporate representative Joseph Grimes had notes of a corporate-level review of Mimms in March 2014 that "cleared him to continue prescribing" and argued summary judgment should not be entered on any statement. (Dkt. 227 pp. 7-8)

The court denied CVS's motion on March 15, 2017. The court acknowledged that it mistakenly failed to reconsider its ruling for the remaining four statements. (SA000064) The court upheld its denial for the statements and cited the Grimes' interview notes which the court said "cleared Dr. Mimms to continue prescribing controlled substances." (SA000066-SA000068) The court imputed this knowledge to the four speakers stating that CVS did not establish that imputation was improper. (SA000067-SA000068) In so doing, the court noted that it also "decline[d] to reject Dr. Mimms' corporate imputation argument" based on the timing of the production of the interview notes. (SA000067)

As a result of the court's order, the statements reported by McIntosh, Mason, Petro and Doyle-Blanton proceeded to trial.

### 3. *Order in Limine Allowing Evidence of Actual Malice Imputation*

CVS sought an order *in limine* precluding Mimms from offering evidence or eliciting testimony regarding the knowledge or mental state of anyone other than the speakers of alleged defamatory statements for the purpose of attempting to impute actual malice to that speaker, (A000202-A000205), which was denied by the court. (SA000049-SA000050) In a Rule 50(a) motion, CVS again argued imputation was improper as matter of law. (A000915-A000917, A000926) Mimms opposed the

10

motion by arguing it was proper for the jury to consider evidence of imputation in determining whether actual malice exists. (A000921-A000923, A000927)

C. *Trial and Orders Excluding Evidence During Trial*

1. *Testimony and Evidence*

During his case in chief, Mimms presented testimony from the four patient witnesses of the Trial Statement, testimony from several CVS witnesses, and his own testimony. Each patient witness testified that a pharmacy representative made the alleged statements in the course of a discussion about the patient's controlled substance prescriptions; that he or she continued to see Mimms; and that the statements did not change his or her opinion of Mimms. (A000513, A000518; A000822-A000828, A000832-A000834, A000836-A000848, A000854-A000855, A000899-A000903, A000908-A000909)

CVS pharmacy representatives testified about pharmacists' efforts to review controlled substances prescriptions consistent with their "corresponding responsibility" – a pharmacist's obligation to refuse to fill a prescription that the pharmacist believes has not been written for a legitimate medical purpose. (A000582-A000585, A000941-A000949, A001218-A001220, A001227-A001228, A001232-A001233) Some pharmacists decided to implement an indefinite store-level suspension on filling for Mimms in 2013, 2014 and 2015 based on several red flags they observed as to Mimms' prescriptions. These red flags included patients appearing impaired, seeking early refills, the same controlled substance prescriptions and combinations written for many of Mimms' patients, concerns

11

about quantities and combinations, and encountering instances where Mimms'
office was uncooperative in efforts to verify prescriptions. (A000582-A000585,
A000937, A000941-A000947, A001150, A001232-A001234, A001246)

Counsel for Mimms asserted in his opening statement that CVS had "cleared"
Mimms and was "comfortable" with Mimms as a prescriber after two corporate
representatives in Rhode Island interviewed him in March 2014, and that CVS
globally held a "common view" about Mimms, based on forthcoming testimony of
non-speakers. (A000571-A000572, A000576) Mimms called two CVS corporate
representatives and elicited testimony that in 2014, those representatives
conducted a separate corporate review to determine if, in addition to the store-level
decisions, CVS should block the filling of all Mimms' prescriptions. (A000616-
A000636) Ultimately, CVS corporate determined the store-level controls were
sufficient for Mimms. (A000634-A000636, A000644-A000645, A000658-A000659)
CVS corporate did not, and never does, communicate with the pharmacy staff about
the outcome of a corporate review because pharmacists must exercise their
independent review ("corresponding responsibility") even if corporate review does
not result in a corporate block. (A000659-A000660, A000679-A000681) Mimms'
counsel also questioned Mimms about perceived defamation at other CVS locations,
and the court allowed Mimms to testify about statements at other unidentified CVS
locations over CVS's objections. (A000818-A000821)

The only alleged defamatory speaker called to testify by Mimms was Alexis
Fields, who testified that after Mason expressed concern to Fields that Mimms'

office had "closed up," Fields told Mason that it "may be the case" that Mimms was under DEA investigation. (A000861-A000862, A000865-A000868) Fields testified that she, in fact, believed that Mimms was under DEA investigation after being told so by a CVS pharmacist. (A000862, A000865-A000866) CVS called alleged speakers Dana Flynn and McCordsville pharmacy technician Ryan Durham (who met the description provided by Doyle-Blanton and worked on the date of the alleged conversation) who both denied ever making any statement referring to Mimms as being arrested or in jail. (A000934, A001017-A001018) Neither party called pharmacist "Tony" to testify. (A001041-A001042)

Mimms testified that after he left the RAI practice group, as many as 100 patients informed him that RAI representatives made defamatory statements against him – including that he was going to jail or had been in jail – but that he did not sue RAI. (A000809-A000813) Mimms also testified that another patient reported to him that someone at a Kmart pharmacy informed her that Mimms was being "investigated." (A000816) Mimms testified that he was only seeking reputational injury (*i.e.* presumed damages) from CVS on account of the alleged statements, and that he was not aware of any way in which his reputation had been negatively affected by any CVS statement that was the subject of the trial. (A000803)

2. *Evidence of Governmental Investigations of Mimms*

The DEA, the agency that regulates and investigates controlled substance providers, and specifically Agent Kuzma with the DEA, made multiple inquiries

13

and sought prescribing information for Mimms from CVS and/or RAI in 2013, 2014 and 2016.

Agent Kuzma, and agents from the Indiana Attorney General's office visited CVS's Greenfield pharmacy in late 2013 asking about doctors of concern and appeared familiar with Mimms. (A001237-A001240) Kuzma went back to the Greenfield pharmacy in 2014 and asked for copies of Mimms' prescription records. (A001240) Kuzma also asked questions about Mimms in another CVS pharmacy in 2014. (A000947-A000949)

Kuzma, on behalf of the DEA, subpoenaed medical records from RAI for nine of Mimms' patients in June 2014 and September 2014. (A000967-A000974, A000977-A000980, A001098-A001100) Denise Fischer, office manager with RAI, testified that all nine patients were patients of Mimms. (A000967-A000974, A000977-A000980) Fischer also testified that Agent Kuzma visited RAI in June 2014 to review records and ask questions about Mimms including if Fischer had heard that Mimms exchanged prescriptions for gift cards. (A000980-A000983)

Mimms' counsel elicited testimony from Fischer to suggest the subpoenas were related to other RAI physicians, not Mimms: (1) patients would see other doctors at RAI if the primary provider was on leave (A000995); (2) Mimms' name did not appear on the subpoena; (A000997); (3) the subpoena was issued in 2014 when RAI had seven physicians (A000994); (4) Mimms left RAI in November 2013 (A000995); (5) various physicians took over Mimms' patients when he left RAI

14

(A000995-A000996); and (6) she could not identify who specifically took over his patients. (A000996-A000997)

Likewise, during closing argument, Mimms' counsel first informed the jury that the subpoena requested information on specific individuals and then also argued that because Mimms resigned well before the DEA issued its subpoenas to RAI and RAI doctors took over Mimms' patients, the investigation did not target Mimms but rather was an investigation of former colleagues at RAI because "[v]arious doctors took over the care of some patients that had previously seen Dr. Mimms" (A001039), or was merely the DEA exercising its "general oversight of prescribers." (A001044)

3.  *CVS's Evidence Excluded by the Court*

The court excluded the following evidence offered by CVS: credibility evidence of Mimms' false interrogatory answer about investigations and disciplinary matters; evidence of Mimms' poor professional reputation; and the DEA investigation being an investigation into Mimms.

a.  *Excluded False Interrogatory Response*

CVS sought to challenge Mimms' credibility as a witness by offering evidence of his false interrogatory answer. During discovery, Mimms responded under oath to CVS's Interrogatory No. 4 as follows:

> Q:   Identify any disciplinary action, investigation, or inquiry at any time relating to You or Your practice of medicine. . . .  This interrogatory includes, but is not limited to, any suspensions, restrictions, probations, or special conditions imposed by the United States Drug Enforcement Administration,

the Indiana Medical Licensing Board, any other professional license board or regulator, or any governmental unit, entity or agency.

A:    **To my knowledge, there are no such disciplinary actions, investigations, or inquiries.**

(A000870-A00871, A001151-A001154)

CVS deposed Mimms about this interrogatory answer and information establishing its falsity. When confronted with this information in his deposition, Mimms admitted that in fact he failed to disclose five prior investigatory or disciplinary proceedings in response to Interrogatory No. 4:

- In 2013, RAI placed Mimms on administrative leave after Community Westview Hospital, having learned of Mimms' affair with a nurse, forbid him to practice at Westview Hospital, as described in a letter from RAI to Mimms dated October 24, 2013 (the "RAI Administrative Leave Letter"). (A000745-A000746, A001094). Mimms testified in his deposition that he did not disclose this disciplinary action. (A000508, A000723)

- In 2012, an individual filed a complaint against Mimms with the Indiana Attorney General, alleging that Mimms had inappropriately prescribed controlled substances for a patient (the "Patient AG Complaint"). (A001069-A001070, A000871). At his deposition, Mimms' recalled this complaint and acknowledged that it resulted in an investigation to which he responded. Yet Mimms testified that he did not recall this incident when responding to the interrogatory. (A000505-A000506, A000734-A000736, A000871)

- In 2011, an RAI employee complained of unwanted sexual conduct from Mimms. (A000991-A000993, A001067-A001068). Again, Mimms confirmed in his deposition that he had known about the investigation and nonetheless failed to disclose. (A000506)

- In 2005, RAI investigated a claim of sexual harassment brought against Mimms by an RAI employee. (A000872-A000873, A001092-A001093) Mimms failed to disclose this investigation, representing that he did not recall it when answering, Interrogatory No. 4. (A00506; A000873)

- In 2001, Mimms was placed on a 30-day administrative leave from Beaumont Hospital after a Beaumont staff member alleged that Mimms made

16

inappropriate statements to her. (A000499)  Mimms again acknowledged this investigation, and yet did not disclose in response to Interrogatory No. 4 because the investigation occurred while he was still a medical resident and thus did not technically involve his "practice."  (A000504, A001251-A001252)

Mimms did not testify that he failed to disclose these five events because he was confused by the question. The interrogatory was answered without objection. (A001151-A001154)

CVS argued that Mimms' false response to Interrogatory No. 4 bore directly on his credibility as the principal witness and thus opened the door to evidence demonstrating the falsity of his response. (A000472-A000482, A000723) The court excluded the testimony of the false interrogatory answer after accepting Mimms' counsel's suggestion that Mimms was confused by the interrogatory. (A000735)

### b. *Evidence of Mimms' Reputation to Rebut Damages*

CVS offered evidence of each foregoing investigation or disciplinary action and RAI's AG Complaint as evidence of Mimms' professional reputation to mitigate presumed reputational damages. The evidence, with the exception of redacted versions of the RAI Administrative Leave Letter and the RAI AG Complaint, was excluded by the court. (A000729, A000736-A000739, A000784, A000789-A000791) The court found this evidence "irrelevant" and "without bearing" on Mimms' defamation claim or the issue of damages. (SA000042-SA000043, A000734-A000739, A000992-A000993)[4]

---

[4]  The court required redactions to "Complaint # 1" – loss of privileges at Westview due to affair and "Complaint # 3" - RAI patient's complaint about Mimms' inappropriate conduct during appointments, respectively. The redactions excluded all reference to Mimms' misconduct from the jury's consideration.

17

CVS also offered evidence of Mimms' 2016 conduct, including (1) five federal and state law enforcement agents coming to his office with a subpoena and taking patient records (A000566-A000567, A000749, A000883-A000884); and (2) an online comment from a Mimms' patient that Mimms was under DEA investigation and that Mimms' office said Mimms could not continue to see him because the DEA took records, as further evidence of his reputation. (A000950-A000955, A001103) CVS also proffered HHS's 2016 records request to a CVS-affiliate in connection with its "criminal investigation" of Mimms' prescribing of Subsys, an opioid, off-label. (A000800-A000801, A000887-A000890, A000960-A000963, A001096-A001097)

### c. *Excluded Evidence of DEA Investigation of Mimms*

CVS offered evidence that the DEA investigation was an investigation of Mimms - not other doctors or patients.

First, CVS offered a 2014 transcript from D.P.'s criminal trial for selling prescription opioids where HHS agent David White testified he was investigating Mimms as the supplying doctor (A000747, A000873-A000877, A000885-A000887, A001184-A001185, A001190-A001191, A001193-A001197, A001202) White testified that he jointly interviewed D.P. with DEA Agent Kuzma to gather information on Mimms in 2012 (A001186-A001189, A001198-A001201) White testified they both interviewed D.P. because they were interested in his prescriber, and D.P. told them Mimms gave him about 1,000 prescription opioid pills every three months and Mimms took gift cards in exchange for pills. (A000706, A000874-A000876, A001187-A001189, A001198-A001201, A001203, A001204-A001206) White testified that

18

before D.P.'s criminal trial, he turned the Mimms investigation over to the DEA. (A000876, A001204-A001206)

Mimms stipulated to the transcript's authenticity and that it would not be barred by the hearsay rule, and CVS proffered a certified copy of the transcript instead of Agent Kuzma's or Agent White's live testimony. (A000442, A000704, A000707-A000709, A000884-A000888) CVS relied on this stipulation in electing not to exhaust administrative channels to override the governmental witnesses' invocation of investigatory privilege. (A000709).[5] Despite Mimms' stipulation, the court excluded the evidence, finding "no link that the DEA investigation regarding Dr. Mimms or any probative value of this evidence [sic], if any, is substantially outweighed by the prejudicial—the undue prejudicial effect to Dr. Mimms." (A000747).

Second, as further evidence to establish CVS's truth defense that the DEA was investigating *Mimms* as a prescriber of concern—not other RAI doctors or the patients on the DEA subpoenas—CVS proffered evidence that seven of the nine patients on the subpoenas were dead or charged/convicted before Mimms left RAI and the deaths and crimes related to controlled substances. CVS offered death certificates of four of the nine patients on the RAI subpoenas (who died from opioid intoxication in 2010 and 2011) and criminal records (for controlled substances-

---

[5] Although CVS initially engaged the *Touhy v. Ragen*, 340 U.S. 462, 468 (1951), process to secure Agent Kuzma and Agent White as witnesses, the DEA and HHS invoked investigatory privilege. (A000700-A000701) CVS sought Mimms' stipulation to the authenticity and non-hearsay admissibility of the transcript as an alternative to live testimony. Mimms did stipulate to the D.P. trial transcript, reserving only relevance and non-hearsay objections. (A000704, A000883-A000885)

related activities in 2012 and 2013) for an additional three patients on the RAI subpoenas. (A000747, A000876-A000879, A001155-A001170, A001171-A001179, A001180-A001181, A001182-A001183, A001184-A001206, A001207, A001208) CVS proffered this evidence to rebut Mimms' argument that the DEA was investigating RAI physicians who took over Mimms' patients when he left RAI and to rebut the inference that the investigation was into the dead or convicted patients. Rather, the DEA was necessarily investigating the prescriber, Mimms, for patients who had prescription drug related deaths or crimes. (A000876-A000879, A000883) CVS suggested a limiting instruction to address any potential prejudice. (A000710-A000711) The court excluded the death certificates and criminal records, finding that the risk of unfair prejudice and confusion of the issues outweighed probative value. (A000746-A00747) As a result of the court's ruling, CVS was also precluded from eliciting testimony from Mimms that he was aware that two of those patients had been prosecuted or were dead. (A000566, A000769-A000770, A001248-AA001249)

Third, CVS proffered evidence that the DEA's investigation continued into 2016, when: (1) DEA Agent Kuzma subpoenaed RAI for originals of the June 2014 records for D.P. and three deceased patients who were on the 2014 RAI subpoenas, (A000880, A001101-A001102); (2) Kuzma subpoenaed CVS to obtain records for D.P. and two of Mimms' deceased patients who were on the 2014 RAI subpoenas, (A000749, Dkt. 275 Ex. A); and (3) in November 2016 three DEA Agents (including

Kuzma) and two undercover police officers went to Mimms' MFR office and left with more than 20 patient files. (A000749, A000883-A000884, A000566-A000567)

The court excluded all evidence of DEA or other investigation into Mimms that postdated the Trial Statements. In drawing this bright line rule, the court determined that such evidence was "not relevant regarding whether CVS defamed Dr. Mimms from late 2013 to 2015 or CVS's defense of truth." (A000749)

4. *Jury Instruction and Juror Questions During Deliberations*

The court refused the following language CVS tendered as part of Instruction 29 to accurately advise the jurors of the actual malice standard:

> Dr. Mimms must prove that the CVS representative actually doubted an alleged statement made about Dr. Mimms even if you determine that there is evidence that the CVS representative made a statement with ill will.

(A000404, A000548, A001025, A001047)[6]

During its deliberation, the jurors were plainly confused about permissible damages considerations, likely bolstered by Mimms' counsel's objected-to, sustained, and never-answered question regarding Mimms' attorneys' fees (A000763-A000765), combined with Instruction 28's statement that damages included but were not limited to the delineated damages. (A000547, A001046-A001047) During deliberations, the jurors sought further instruction from the court with the following questions:

> *Are there guidelines for damage amounts?*

> *Are we allowed to ask for legal fees to be reimbursed?*

---

[6] Tendered Instruction 34. (A000404)

(A001048-A001049) Although Mimms' counsel agreed that attorneys' fees were not properly awardable damages (thereby confirming the unwarranted basis for his attorneys' fees question), he objected to CVS's proposed supplemental instruction that "the issue of Dr. Mimms' attorneys' fees is not an issue before the jury," and the court refused to give it. (A001054-A001065) Instead, the court responded to the jurors with supplemental Instruction 38 which merely referred the jurors back to certain instructions. (A001062, A000558)

Within twenty-five minutes, the court reconvened. (A001065-A001066) The jurors found that Mimms had proven defamation *per se* as to all four statements, and awarded a total of $1,025,000 to Mimms: $200,000 for the Mason DEA Statement, and $275,000 each for the McIntosch Pill Mill, Petro Jail, and Doyle-Blanton Arrested Statements. (SA000071-SA000072) Judgment was entered the same day and this appeal followed. (SA000073-SA000074)

## SUMMARY OF ARGUMENT

The district court erred in *denying* summary judgment for CVS on actual malice because the court improperly applied corporate imputation to the actual malice subjective state of mind standard. Summary judgment should have been entered for CVS on this issue of law. The court also erred at trial by allowing improper imputation evidence and argument suggesting imputation was an appropriate method of proving subjective state of mind. Further, the court erred as to its "ill will" instruction by refusing to instruct on the subjective state of mind requirement to prove actual malice.

22

At trial, the district court erred in excluding evidence of Mimms' false interrogatory, Mimms' poor professional reputation in general, and the DEA investigation. Finally, the district court did not properly respond to the jurors' question regarding recovery of attorneys' fees so jurors were implicitly permitted to consider them as presumed damages.

STANDARDS OF REVIEW

The review of a summary judgment determination, as sought in Section I.A, is subject to *de novo* review. *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017).

Review of the validity of a jury instruction is subject to Indiana law in this diversity action, *Leon v. Caterpillar Indus., Inc.*, 69 F.3d 1326, 1341 (7th Cir. 1995), and challenges to an instruction as an incorrect statement of the law, *see* Section I.C, are subject to *de novo* review. *Wal-Mart Stores, Inc. v. Wright*, 774 N.E.2d 891, 893 (Ind. 2002). *See also Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 835 (7th Cir. 2016). General challenges to jury instructions are reviewed for an abuse of discretion. *Id.* at 893-94; *Empress Casino Joliet Corp.*, 831 F.3d at 835. A district court's response to a question from the jury regarding the law, *see* Section III, is treated as a supplemental jury instruction and subject to abuse of discretion review. *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 741 (7th Cir. 2016).

The Court reviews evidentiary rulings, *see* Sections I.B and II, for abuse of discretion. *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012). Even if the district court erred, reversal is not warranted if the error was harmless. *Id.*

ARGUMENT

I.     **The court erroneously denied CVS's motion for summary judgment based on an incorrect application of law regarding imputed knowledge for actual malice, erroneously allowed imputation evidence at trial, and erroneously instructed the jurors regarding "ill will" as it relates to actual malice.**

A.  *The court erred in denying summary judgment on the issue of actual malice.*

The district court erred when it denied summary judgment based on its legal conclusion that the knowledge of one corporate actor could be "imputed" to other corporate actors for purposes of establishing the necessary actual malice subjective state of mind. CVS requests that the Court reverse the denial and enter summary judgment in favor of CVS.

To establish a claim of defamation, a "plaintiff must prove the existence of a communication with defamatory imputation, malice, publication, and damages." *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010) (quotation omitted). Defamation *per se* arises when the language of a statement, without reference to extrinsic evidence, suggests, *inter alia*, "criminal conduct" or "misconduct in a person's trade, professions, office, or occupation[.]" *Id*. In actions for defamation *per se*, a plaintiff is entitled to "presumed" damages for reputational harm. *Id*.

Indiana holds defamation plaintiffs to an exacting, subjective actual malice standard[7] that required Mimms to prove by clear and convincing evidence that the alleged speaker made the statement "with knowledge that it was false or with

_____

[7] The court found, and it is undisputed, that the actual malice defamation standard applies. (SA000015-SA000016)

reckless disregard of whether it was false or not." *Brewington v. State*, 7 N.E.3d 946, 959 (Ind. 2014), *reh'g denied* (July 31, 2014), *cert. denied*, 135 S. Ct. 970, 190 L. Ed. 2d 834 (2015) *reh'g denied*, 135 S. Ct. 1524, 191 L. Ed. 2d 454 (2015) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 279-80, 84 S.Ct. 710 (1964)). Without proof that the speaker *actually* doubted his statement, Indiana law forbids using the statement as a basis for civil liability. *Id.* at 960. The standard requires a showing that a speaker "*in fact* entertained serious doubts as to the truth of [the alleged defamatory] statements or had a high degree of awareness of their probable falsity." *Id.*; *see also Poyser v. Peerless*, 775 N.E.2d 1101, 1107 (Ind. Ct. App. 2002).

The court agreed that this standard applied and on reconsideration granted summary judgment as to five of the nine alleged statements it understood CVS asked the court to reconsider. Yet when CVS explained that its reconsideration motion was directed to all statements, the court denied summary judgment as to the remaining four statements based on the incorrect application of imputation to the subjective state of mind standard.  The court concluded that knowledge of one corporate actor, unknown to the alleged speaker, could be "imputed" for purposes of establishing actual malice. (SA000066-SA000068) Such a theory is contrary to defamation law.

There is no Indiana authority supporting the proposition that the knowledge of one corporate actor unknown to the individual corporate actor who ultimately published a defamatory statement can be imputed to that speaker for purposes of establishing actual malice. Although the knowledge and actions of an *agent* are

generally imputed to the *principal* when committed within the scope of the employment or agency relationship, outside the clearly inapplicable theories of a "sole actor" scenario or corporate veil-piercing, there is no legally cognizable support for the proposition that corporate knowledge can be imputed *downward* to employees or agents. *See Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1116–17 (Ind. Ct. App. 2008) (discussing general principles of agency and imputation, and "sole actor" situation in which principal and agent are considered one and the same); *Browning-Ferris Indus. of Ill., Inc. v. Ter Maat*, 195 F.3d 953, 956 (7th Cir. 1999) (plaintiffs argued for piercing corporate veil to hold officer liable for environmental cleanup costs; court observed "there is no doctrine of 'superiors' liability,' comparable to doctrine of respondeat superior," and that corporate officer is not automatically liable for acts of a corporation).

Indeed, "imputing" actual malice between different actors within an organization has been squarely rejected in the context of defamation law. *See Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 124 (2d Cir. 2013) ("[W]e will only consider whether the individual at Yale who was responsible for publication of the defamatory statement acted with the state of mind required for actual malice."); *Holbrook v. Harman Auto., Inc.*, 58 F.3d 222, 225 (6th Cir. 1995) ("[W]here, as here, the defendant is an institution rather than an individual, the question is whether the individual responsible for the statement's publication acted with the requisite culpable state of mind."); *Flotech, Inc. v. E.I. Du Pont de Nemours & Co.*, 814 F.2d

775, 781 (1st Cir. 1987) ("Plaintiffs properly focus on the actions of the two Du Pont employees with the primary roles in issuing the press release.").

The basis on which the court denied summary judgment was an incorrect application of defamation law, and creates an untenable standard for corporations defending defamation claims based on statements made by individual employees. *Brewington* and defamation law generally are clear that a defamation claim runs afoul of the First Amendment protections set by the "very high standard" of actual malice, unless there is proof that a speaker "*actually* doubted his assertions[.]" *Brewington*, 7 N.E.2d at 959–60 (emphasis in original). There was no evidence suggesting that any speaker actually doubted any of the alleged statements. As to three of the four speakers, there was no state of mind evidence, and the only evidence from the fourth speaker was that she believed her statement to be true. The trial court relied exclusively on an improper imputation theory to find a question of fact as to actual malice. Accordingly, the court erred as a matter of law in denying summary judgment.

Finally, the court stated that it "declines to reject Dr. Mimms' corporate imputation argument because there is no dispute that CVS waited until the night prior to Dr. Mimms' dispositive motion deadline to produce documents relating to the interview, despite Dr. Mimms' request for production." (SA000067) The purported timing of the production of the relied-upon imputation evidence does not cure the error of law in considering those notes. Where evidence is not relevant based on a legal issue, it is improper to consider discovery issues with the timing of

the production of the evidence. In any event, the court failed to consider that, despite the notes being informally and separately requested after the discovery cut-off date, (A000172), CVS provided them to Mimms approximately 30 days before Mimms filed his summary judgment response. (Dkt. 227 p. 8 n.3, Dkt. 95 p. 25)

The court's incorrect application of Indiana law and its summary judgment order concluding that perceived knowledge of one corporate actor can be imputed to another corporate actor to establish a subjective state of mind standard is erroneous as a matter of law. This Court should reverse the denial of summary judgment and enter judgment in favor of CVS on the Trial Statements.

B. *The court compounded its legal error regarding imputation of corporate speakers' knowledge at trial by admitting such evidence over CVS's objection.*

Alternatively, the Court should reverse the district court's admission of imputation evidence and remand for a new trial because it was error for the jurors to consider imputation evidence.

After conducting an erroneous legal analysis at summary judgment whereby it imputed the perceived knowledge of one corporate actor to others for purposes of establishing state of mind evidence sufficient to support actual malice, the court compounded its error at trial by entering an order that allowed Mimms to introduce the knowledge or mental state of CVS representatives who were not alleged defamatory speakers. (SA000049-SA000050, A000202-A000206; *see also* A000915-A000917, A000926) Mimms' counsel questioned Joseph Grimes at length about his corporate review of Mimms in March 2014. (A000616-A000636, A001221, A001222) Mimms also testified, over CVS's objections, about alleged defamatory statements

at other unidentified CVS locations. (A000818-A000821) Mimms' counsel, over CVS's objection, was also permitted to read Kim Petro's testimony describing the statements and demeanor of a pharmacist present at the time of Dana Flynn's alleged statement whose statements were not at issue in the trial. (A001254-A001255, A001266-A001267, Dkt. 282-1 at 17, 40) This evidence should not have been presented to the jury because its relevance was based on the imputation theory.

Mimms' counsel alleged in opening and closing that "CVS is the speaker[,]" that CVS had a "common view" about Mimms, and the global effect of CVS's corporate review as having resolved the company's concerns. (A000571, A000576, A001043) There was no evidence that any of the speakers of the Trial Statements were aware of the results of CVS's corporate review. CVS corporate did not, and never does, communicate with the pharmacy staff about the outcome of a corporate review because pharmacists must exercise their independent review regardless of the corporate review. (A000659-A000660, A000679-A000681) The jurors were allowed to improperly impute knowledge, demeanor or beliefs of others rather than assess the subjective state of mind for each alleged speaker as required for purposes of determining actual malice.

Allowing the improper imputation theory and evidence to proceed through trial was clearly harmful because otherwise, subjective state of mind evidence to support actual malice was lacking for the alleged speakers. Alexis Fields testified that she, in fact, subjectively believed that Mimms was being investigated by the

DEA after being told so by a CVS pharmacist prior to her conversation with Mason. (A000862, A000865-A000866) Mimms did not solicit any testimony from Ryan Durham regarding any belief as to whether or not Mimms had been arrested. (A000930-A000940) And, jurors were provided with no subjective state of mind testimony from alleged pharmacy speaker "Tony" as he was not called to testify. Instead, jurors only heard tenuous circumstantial evidence that patient witness McIntosh perceived that Tony's demeanor shifted to "guarded," that he had a "frank" but "stern" tone, and acted like McIntosh "had just wasted his time" when Mimms was identified as McIntosh's treating physician. (A000824-A000830)

The harm from allowing the imputation evidence was necessarily substantial and played a key role in the jury's verdict. *See Hall v. Flannery*, 840 F.3d 922, 930-31 (7th Cir. 2016). Actual malice was an ultimate issue in Mimms' case and he was permitted to present evidence in support of a theory that has no basis in law. The court committed prejudicial evidentiary error when allowing such evidence to be admitted over CVS's objection. In the alternative to reversing the court's erroneous denial of summary judgment based on an incorrect application of the law, this Court should remand for a new trial based on the erroneous admission of imputation evidence.

C. *The court incorrectly stated the law on actual malice when instructing jurors that "ill will" evidence was sufficient to meet Plaintiff's burden.*

After conducting an erroneous actual malice analysis at summary judgment, the court further erred when it failed to instruct the jury that Mimms was required to prove that each CVS representative "*actually doubted* an alleged statement made

about Dr. Mimms." (A000404 (emphasis added)) Rather, over CVS's objection, it instructed only that "[i]n deciding whether a CVS representative alleged to have made a statement knew the communication was false or had serious doubts as to the truth of the communication, you may consider that representative's *attitude or ill will* toward Dr. Mimms." (A000548, A001025, A001047).

In *Brewington v. State*, the Indiana Supreme Court made clear that the actual malice test is a matter of the speaker's subjective sincerity – "whether he *in fact* entertained serious doubts as to the truth" of the statement "or had a high degree of awareness of [its] probable falsity" – "*even if* he was motivated by ill will." 7 N.E.3d at 959-60 (quotation omitted) (emphasis added). In *Brewington*, the court concluded that mere evidence that a speaker harbored ill will against a judge (referring to the judge as being "crooked" and a "child abuser" and who had "committed criminal conduct") was insufficient to hold the speaker liable for defamation because "without proof that he *actually doubted* his assertions . . . the First Amendment forbids using those statements as a basis for civil . . . liability." *Id.* at 960 (emphasis in original). *See also Love v. Rehfus*, 946 N.E.2d 1, 15 n.12 (Ind. 2011).

The court's incorrect Instruction 29 led jurors to believe that they could conclude actual malice existed *merely* by considering attitude or ill will without any proof that a speaker *actually doubted* the statement, which is contrary to *Brewington*. (A000542, A000548) Indeed, the prejudicial impact of this incorrect statement of the law is illustrated by the jury's conclusion that Mimms met his

actual malice burden with respect to the McIntosh Pill Mill Statement. The alleged speaker, Tony, was not called to testify by Mimms. McIntosh testified that Tony said he would not fill for Mimms which was consistent with Tony's supervisor's testimony that they all determined Mimms' prescriptions were not legitimate. (A001235-A001236) Yet the jury must have focused on the minimal circumstantial "ill will" evidence from McIntosh, who perceived that Tony became "guarded[,]"had a "frank" but "stern" tone, and acted like McIntosh "had just wasted his time" when Mimms was identified as McIntosh's treating physician. (A000824-A000830)

Where an instruction improperly invites jurors to deviate from an applicable burden of proof or standard of care, remand for a new trial is required. *Wal-Mart Stores, Inc.*, 774 N.E.2d at 895–96; *Nat'l Steel Erection v. Hinkle*, 541 N.E.2d 288, 295-97 (Ind. Ct. App. 1989). Accordingly, remand for a new trial where the jurors are correctly instructed regarding "ill will" as it relates to Mimms' actual malice burden is warranted.

## II. The district court abused its discretion in excluding evidence of Mimms' credibility, his poor reputation, and CVS's defense of truth.

CVS also requests vacatur and remand for a new trial because the court erred in excluding (1) evidence of Mimms' credibility as a principal witness, (2) evidence of his professional reputation squarely at issue, and (3) evidence tending to prove the truth of the statement that the DEA had investigated Mimms. The cumulative effect of these errors rendered the trial fundamentally unfair to CVS.

The erroneous exclusion of evidence warrants a new trial when the error prejudices the substantial rights of the objecting party. *Pub. Serv. Co. of Ind., Inc. v.*

*Bath Iron Works Corp.*, 773 F.2d 783, 790 (7th Cir. 1985). This occurs when the

error precludes a litigant from presenting its case. *Thompson v. City of Chicago*, 722

F.3d 963, 971 (7th Cir. 2013). Multiple errors, even if harmless when viewed

individually, nonetheless warrant a new trial "if the cumulative effect of those

otherwise harmless errors deprives a litigant of a fair trial." *Nelson v. City of*

*Chicago*, 810 F.3d 1061, 1075 (7th Cir. 2016) (granting new trial due to multiple

erroneous evidentiary rulings); *Thompson*, 722 F.3d at 980 (same).

A.  *Exclusion of evidence of Mimms' false interrogatory response prevented CVS*
    *from challenging Mimms' credibility.*

CVS offered Mimms' false interrogatory answer as evidence of his lack of

credibility. In an interrogatory, CVS asked Mimms about any investigations or

disciplinary actions. Mimms' sworn answer was that he knew of no investigations or

disciplinary actions against him. (A001151-A0001154, A000870-A000871) CVS then

conducted its own investigation and found five investigations/disciplinary actions

against Mimms.

When confronted with this evidence at his deposition, Mimms testified that

in fact he failed to disclose five prior investigatory or disciplinary proceedings in

response to Interrogatory No. 4. (A000508, A000723, A000504-AQ000506, A000871,

A001251-A001252) Mimms provided no explanation for his failure to disclose the

2011 sexual harassment complaint or RAI's investigation of Mimms and discipline

of administrative leave in 2013. (A000506, A000508) He testified that he saw no

need to disclose his 2001 administrative leave from Beaumont Hospital because he

was a resident at the time. (A000504, A001251-1252) Mimms testified that he failed

33

to recall the 2012 consumer complaint filed with the Indiana Attorney General and RAI's 2005 investigation. (A000505-A000506). Mimms did not testify that he failed to disclose these five events because he was confused by the interrogatory.

CVS sought to introduce Mimms' false interrogatory answer at trial as evidence of Mimms' credibility because (1) his testimony contradicted CVS's witnesses' testimony about alleged defamatory statements and the corporate review (*see, e.g.*, A000590, A000664, A000680-A000681, A000692-A000693, A000756, A000760); (2) his detailed account of a conversation with Alex Zweig, during which Zweig allegedly "apologized" for the inability of CVS stores to fill Mimms' prescriptions, and acknowledged that CVS was "wrong" but that it was "under pressure by the DEA" (*compare* A000756 *and* A000586-A000588); (3) Mimms testified that the statements might be having an impact on his professional reputation (A000804-A000807); and (4) he asked the jury to award him substantial damages. (A000507, A001042-A001045) Mimms objected to the admissibility of the false interrogatory evidence. (A000716-A000719)

Mimms' attorney suggested, for the first time and without any basis in Mimms' sworn testimony, that Mimms "misunderstood" Interrogatory No. 4 and that his deposition testimony cured any doubt his false response had cast on his credibility.  (A000717-A000718) *Even before Mimms testified at trial*, the district court accepted the explanation of Mimms' counsel, finding as follows:

> Counsel for the plaintiff explained that Dr. Mimms misunderstood the question in the interrogatory. . . . the Court is going to accept the plaintiff's explanation, and finds that it's reasonable, when reading the interrogatory

> question, that Dr. Mimms misunderstood the question
> and . . . did not intend to respond falsely.

(A000735)

The court abused its discretion because it usurped the role of the jury, denying it the opportunity to fairly assess Mimms' credibility. "The court is not free to weigh the evidence and thus invade the province of the jury, whose prerogative it is to judge the facts. The jury has a right to draw from proved circumstances such conclusions as are natural and reasonable." 75A Am. Jur. 2d Trial § 603 (2017). Credibility determinations lie exclusively in the province of the jury; a district court may not substitute its own judgment of a witness's credibility for that of the jury. *Schultz v. Thomas*, 832 F.2d 108, 111 (7th Cir. 1987); *United States v. Higgins*, 362 F.2d 462, 464 (7th Cir. 1966). When Mimms took the stand, he subjected his credibility to scrutiny. *See* Fed. R. Evid. 608(b); *Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 605 (7th Cir. 1985), *abrogated on other grounds as recognized by Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 425 n.12 (7th Cir. 2015). And "[n]othing could be more probative of a witness's character for untruthfulness than evidence that the witness has previously lied under oath." *United States v. Whitmore*, 359 F.3d 609, 619 (D.C. Cir. 2004) (finding reversible error where court prevented defendant from impeaching key witness's credibility on cross-examination of past misconduct under Rule 608(b) and Rule 403).

Although the court readily accepted the suggestion from Mimms' counsel, this was not for the court to accept. Mimms' deposition testimony reflected no confusion when he provided the false sworn interrogatory response. Mimms had yet to testify

at trial, and the court had no basis, even if proper, to asses Mimms' credibility.
Rather, CVS should have had the opportunity to question Mimms on his false
interrogatory response. Even if Mimms testified that he misunderstood the question
he answered under oath (which was not objected to as vague or ambiguous) that
itself would have been relevant to the jury's assessment of his credibility. The jury
should have had this information to inform its assessment of Mimms' testimony vis-
à-vis CVS's witnesses and the harm that Mimms purportedly suffered. The court
rendered its own credibility determination and thus abused its discretion. Because
of the importance of Mimms' credibility at trial, such abuse of discretion warrants
remand for a new trial.

B. *Exclusion of mitigating circumstances evidence of Mimms' poor reputation
was erroneous.*

Mimms sought substantial damages based on harm that CVS allegedly
caused his reputation as a result of four statements to patients, and yet the court
excluded evidence of more than four instances (and prevented the jury from hearing
full information of the RAI AG Complaint and the RAI Administrative Leave
Letter) of Mimms' bad conduct that showed Mimms' professional reputation
suffered well before, and after, CVS employees allegedly uttered any statements.

Indiana law expressly allows evidence of mitigating circumstances – evidence
to reduce damages – in a defamation case. Indiana Code § 34-15-1-2. (A000549)
Such evidence is particularly important when a plaintiff seeks damages for
defamation *per se*, where the law presumes damages "in recognition that a legally
protected interest of the plaintiff, his good reputation, has been invaded." *Henrichs*

*v. Pivarnik*, 588 N.E.2d 537, 545 (Ind. Ct. App. 1992).[8] Defamation damages are intended to compensate a plaintiff for statements that "lower[ ] the person in the community's estimation or deter[ ] third persons from dealing or associating with the person." *Dugan*, 929 N.E.2d at 186. Thus, evidence of the community's estimation of that person and the willingness of third persons to deal or associate with that person are directly relevant to jury's damages considerations.

CVS's proffered evidence that related generally to Mimms' professional reputation in the community was relevant to his claim of harm to his good reputation. Before the alleged statements to individuals for which Mimms sought damages, Mimms' "community" was already aware of: (1) a consumer's poor opinion of Mimms for inappropriately prescribing opioids to an alcoholic patient (Patient AG Complaint); (2) a 2011 sexual harassment complaint from an RAI employee; (3) a 2005 sexual harassment complaint from an RAI employee; (4) a sexual harassment complaint at Beaumont Hospital; (5) evidence that an affair with a nurse caused Westview Hospital to prohibit Mimms from practicing there and caused RAI to place Mimms on administrative leave, conduct its investigation, and, in part, file a complaint with the attorney general (RAI Administrative Leave Letter and RAI AG Complaint). (A000477-A000479, A000791-A000793, A000870-A000873) Because Mimms testified about claimed 2016 harm from CVS statements (A000807, A000817-A000818), CVS also offered evidence of Mimms' poor reputation at that

---

[8] In any event, as the court observed, Mimms testified that CVS's statements generally jeopardized "[his] working relationship[s] with other physicians and medical entities . . . [and] therefore [his] livelihood." (A000736) This speculative claim of damages opens the door to evidence of complaints raised against Mimms in the professional setting.

time: (1) the DEA and other agents came to Mimms' office demanding and taking patient records (A000566-A000567, A000749, A000883-A000884); and (2) a patient posted an online comment that Mimms' was under DEA investigation suggesting Mimms' office had informed the patient of an investigation. (A000950-A000955, A001103) Further, jurors were precluded from considering that Mimms' damages, if any, ceased in 2016 at the point in time that HHS had initiated a criminal investigation into Mimms with respect to his prescribing of the opioid Subsys for off-label use. (A000800-A000801, A000887-A000890, A000960-A000963, A001096-A001097) A plaintiff should not be permitted to seek general presumed damages for reputational harm but then limit scrutiny of his reputation and conduct as the court allowed here. *See Marcone v. Penthouse Int'l Magazine For Men*, 754 F.2d 1072, 1079 (3d. Cir. 1985) (approving admission of unrelated instances of bad conduct).

Because a person's professional reputation encompasses more than just one discrete aspect of their profession, unfavorable evidence related to that person's professional reputation in general must be admitted as relevant and not unfairly prejudicial. Rule 403 does not authorize the exclusion of relevant evidence merely because it prejudices the objecting party; the evidence must risk inducing the jury to decide the case on an improper basis. *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012). In *Bularz v. Prudential Ins. Co. of Am.*, this Court, in dicta, suggested that evidence of the defamation plaintiff's past misconduct was relevant to demonstrate his already compromised reputation and thus to mitigate damages. 93 F.3d 372, 378–79 (7th Cir. 1996). In *Marcone v. Penthouse Int'l Magazine For Men*,

the Third Circuit observed that although a defamatory article linked the plaintiff to illicit drug activity, a broad scope of his past conduct—trial for tax evasion, failures to appear at hearings, and punching a police officer during a traffic stop—was admissible to prove that his tarnished reputation could sustain no further damage. 754 F.2d 1072, 1079 (3d. Cir. 1985). In both cases, evidence of broader reputation was admitted even though it was "prejudicial" in that it might have harmed the plaintiff's case.

Likewise, the evidence CVS proffered bore directly on Mimms' professional reputation and was not unfairly prejudicial. Mimms sought damages based on statements to consumers but was able to exclude evidence of a consumer's poor opinion of him for prescribing opioids to an alcoholic, being accused of sexual harassment by co-workers on three occasions, having an affair with a colleague, and an online comment that he was under DEA investigation. This evidence weighs squarely on Mimms' standing in the medical community and cannot be considered "unfairly" prejudicial when Mimms seeks damages from CVS for jeopardizing his working relationships within that same community. Therefore, exclusion of such evidence constitutes an abuse of the court's discretion, and this Court should remand for a new trial.

C. *The district court committed reversible error by excluding evidence critical to CVS's defense of truth.*

The district court excluded evidence of the truth of the CVS statement that Mimms—not former colleagues or the patients—was under DEA investigation. Truth is a complete defense to defamation. *Branham v. Celadon Trucking Svs., Inc.,*

744 N.E.2d 514, 522 (Ind. Ct. App. 2001). The jury heard evidence of a DEA investigation including the DEA subpoenaing records and talking with RAI, and the DEA interviewing and obtaining Mimms' patient records from CVS. Mimms' counsel argued that the DEA investigation could have been an investigation into Mimms' former colleagues. The admitted evidence, without more, permitted this argument and the verdict indicates the jury accepted it. CVS offered, and the court excluded, evidence in three critical areas to refute this inference: (1) testimony that the DEA began its investigation of Mimms in 2012 (A000873-A000877, A001184-A001189, A001198-A001201, A001203, A001204-1206); (2) evidence that any of the RAI physicians who took over Mimms' patients were not the subject of the investigation because seven of the nine Mimms' patients on the subpoenas were dead or charged/convicted for prescription drug-related issues (A000747, A000876-A000879, A001155-A001170, A001171-A001179, A001180-A001181, A001182-A001183, A001184-A001206, A001207-A001208); and (3) evidence that the DEA's investigation into Mimms continued into 2016 through seizure of records and further subpoenas. (A000566-A000567, A000749, A000880, A001101-A001102, Dkt. 275 Ex. A) Exclusion of this evidence was error and it was not harmless because this evidence, taken together, refutes Mimms' attempt to deflect the DEA investigation to someone other than himself. *See Thompson*, 722 F.3d at 979–80 (finding cumulative effect of multiple errors justified new trial).

a.  *D.P. Trial Transcript*

Agent White's testimony in the D.P. trial is clear evidence that DEA Agent Kuzma began an investigation *into Mimms* in 2012 prior to her 2013 visit to CVS and the 2014 RAI subpoenas. Plaintiff stipulated to the authenticity of the transcript and agreed he would not assert a hearsay objection to the transcript at trial. There is no question that the sworn testimony of a federal officer of an investigation of Mimms' prescribing habits and a handoff of that investigation to a DEA agent is evidence that Mimms was under DEA investigation. The probative value of this evidence outweighed any prejudicial effect because Mimms argued the DEA investigation could have been an investigation into Mimms' patients or former colleagues.

Mimms challenged the testimony only on relevance grounds by his stipulation, and when offered, Mimms' counsel objected, arguing that Agent White testified that D.P. lacked credibility, and, therefore, Agent White ended the HHS investigation. (A000885) But this view, which the court apparently adopted, misconstrues the fact CVS set out to prove. Whether the HHS and subsequent DEA investigations into Mimms would ultimately uncover proof of wrongdoing is not the point. To prove the truth of the CVS statement that Mimms "was under DEA investigation," CVS need only prove that the DEA picked up the HHS investigation in some form or capacity. *Heeb v. Smith*, 613 N.E.2d 416, 420-21 (Ind. Ct. App. 1993) (citing *Masson v. New Yorker Magazine, Inc.*, (1991), 501 U.S. 496, 111 S.Ct. 2419, 115 L.Ed.2d 447). Agent White's prior testimony tends to prove that fact.

Further, Agent White's testimony that D.P. informed Agent Kuzma and himself that Mimms traded gift cards for prescriptions established the significance of Denise Fischer's recollection of Kuzma's questions about any knowledge of Mimms accepting gift cards for prescriptions. (A000983) The evidence was not unfairly prejudicial, as the evidence tended to prove a fact in dispute and not provide an emotional basis for the jury to find for CVS.

To the extent the court excluded Agent White's testimony as hearsay, it unjustly relieved Mimms of his stipulation and thus deprived CVS of the benefit of its bargain.[9] Stipulations promote the efficient disposition of litigation and should remain binding unless relief is necessary to prevent a "manifest injustice." *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1206 (7th Cir. 1989). Judicial relief from a stipulation not only eliminates the benefit of the bargain for the stipulation's proponent but also prejudices that party who relied on the stipulation in marshaling its evidence for trial. *FDIC v. St. Paul Fire and Marine Insurance Co.*, 942 F.2d 1032, 1038 (6th Cir. 1991). CVS relied on Mimms' stipulation in deciding not to exhaust administrative procedures to secure the live testimony of Agent Kuzma or Agent White. (A000709) The district court's disregard for the parties' stipulation, therefore, left CVS without a critical link in its truth defense including substantiating the testimony of other witnesses.

---

[9] *See* Tr. at 3-629 ("Mr. Hull: 1294, Your Honor. It is the criminal transcript of D.P. The Court: Which is hearsay. I know he didn't stipulate to this. Did you, Mr. May?"); 2-273 ("The Court: I don't know how you can agree to stipulate to a criminal transcript.").

b. *Patient Deaths and Criminal Charges*

CVS offered evidence that seven of the nine patients on the RAI subpoenas (including D.R.) were dead or charged/convicted before Mimms left RAI to counter Mimms' argument that the subpoenas related to RAI physicians who took over Mimms' patients when Mimms left RAI. Further, the deaths and crimes were prescription drug-related which showed the DEA was interested in the prescriber. CVS argued that the death certificates show (1) that the DEA's investigation did not target the physicians who took over Mimms' patients or the patients named in the subpoenas; and (2) that the cause of each death—prescription drug overdose—tends to prove that the DEA's interest in those deceased patients concerned the *source* of their prescription drugs, Mimms. Similarly, criminal records show that three other patients had been charged or convicted before Mimms left RAI. (A001155; A001171; A001184-A001206) The DEA was not investigating RAI physicians who took over Mimms' patients when he left RAI or the patients themselves because they were dead or charged before Mimms left RAI. Finally, Mimms himself admitted that he knew one of his patients had died and another was prosecuted for opioid-related issues. (A000566, A000769-A000770, A001248-A001250)

The district court excluded this evidence on grounds that "CVS . . . offered no evidence that Dr. Mimms was under investigation for the deaths of these patients or the criminal acts of his patients." (A000747) This ruling makes clear that the court misconstrued both CVS's stated position and its burden of proof. CVS did not need, nor did it intend, to prove that the DEA suspected Mimms as the cause of

patient deaths or that the DEA determined Mimms been involved in a criminal conspiracy. Instead, CVS offered the evidence to prove the investigation was an investigation of Mimms' prescribing habits. As a result, the court failed to appreciate the probative force of this evidence within the context of CVS's truth defense.

The court abuses its discretion when its exclusion of relevant evidence effectively precludes a party from presenting its defense in an organized and complete fashion. *Pub. Serv. Co. of Ind., Inc.*, 773 F.2d at 790. In *Public Service Co.*, the defendant appealed a jury verdict against it on the basis that the trial court erroneously excluded evidence critical to the defendant's theory of the defense. *Id.* at 785. This Court agreed and remanded for a new trial, concluding that although the defendant had opportunity to present its defense through argument and some testimony, the trial court's evidentiary rulings precluded the presentation of *facts* to support its defense. *Id.* at 790.

Likewise, the exclusion of patient death certificates and criminal charges/convictions, and Mimms' knowledge of his patients' death and prosecution, barred CVS from presenting its complete defense of truth. Evidence that four out of seven patients named in the June 2014 subpoena died of prescription drug overdoses and three others had been charged refutes Mimms' express argument that the DEA was investigating their subsequent treating physicians at RAI and any inferential argument that the DEA was investigating those patients. The

evidence compels that which CVS set out to prove—that the DEA investigated the prescribing physician, Mimms.

### c. *Evidence of DEA Investigation in 2016*

Finally, CVS offered evidence that DEA Agent Kuzma—the same agent who was involved in a 2012 investigation of Mimms jointly with HHS before the hand off to the DEA, subpoenaed patient records from RAI in 2014, and interviewed CVS pharmacists and gathered Mimms' patient records in 2013 and 2014—appeared unannounced at Mimms' practice in 2016 with four other law enforcement officers to obtain Mimms' patient records. (A000566-A000567, A000749, A000883-A000884) CVS also offered evidence that DEA Agent Kuzma served two subpoenas in 2016 seeking the originals of patient records for the patients on the 2014 subpoenas and additional records for those patients. (A000749, A000880, A001098, A001099-A001100, A001101-A001102, Dkt. 275 Ex. A) This evidence is relevant to prove that the DEA investigation in 2014 was an investigation into Mimms.

The district court abused its discretion when it drew a bright line rule against evidence arising after the CVS statements were made. A blanket exclusion of relevant evidence warrants a new trial where, as here, the excluded evidence prevents a party from presenting its complete case. *See Cerabio v. Wright Med. Tech., Inc.*, 410 F.3d 981, 994 (7th Cir. 2005). A court abuses its wide discretion if it fails to exercise that discretion in determining the probative value of evidence and instead excludes evidence along arbitrary temporal lines. *Id.* (citing *Riordan v. Kempiners*, 831 F.2d 690, 698–99 (7th Cir. 1987)).

The court excluded all 2016 evidence of CVS's truth defense as "not relevant regarding whether CVS defamed Dr. Mimms from late 2013 to 2015 or CVS's defense of truth." (A000749) But this blanket exclusion without meaningful consideration of the probative force of this evidence, especially when viewed with the body of CVS's proffered evidence, amounts to a clear abuse of discretion. *See Cerabio*, 410 F.3d at 994. Together with Agent White's testimony, the death certificates, the criminal charges/convictions, the 2016 subpoenas and the November 2016 visit to MFR tend to prove that the DEA in fact investigated Mimms' prescribing practices and that this investigation *continued* into 2016. As such, this Court should vacate the judgment and remand for a new trial for the Mason and Petro statements based on the prejudicial exclusion of evidence of truth of those statements.

## III. The district court committed reversible error when it refused to give a supplemental jury instruction to correct jurors' confusion regarding attorneys' fees as damages.

The district court abused its discretion when it failed to inform the jury that Mimms' attorneys' fees were not an issue before the jury after the jurors asked the court during its deliberations whether "there [are] guidelines for damage amounts" and "[a]re we allowed to ask for legal fees to be reimbursed?" (A001048-001049)

The court disregarded analogous Seventh Circuit authority when it refused to provide a concrete answer after the jurors expressed confusion on the law. *Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678, 685 (7th Cir. 2006). In *Schmitz*, this Court affirmed that it was proper to admonish jurors that the issues of medical and workers' compensation benefits were "simply not before the court or the jury" after

jurors inquired whether the plaintiff had received any such benefits; if the court had affirmatively answered that he had *not* received any benefits it could have moved the jurors to find the defendant liable and award damages "out of concern that [plaintiff's] injury might otherwise go uncompensated." *Id. see also Chu v. Am. Airlines, Inc.*, 285 F.3d 756, 758 (8th Cir. 2002) (reversible error where the court's response to a jury question *may* have caused the jury to inflate its damages award to account for attorneys' fees); *Conley v. Very*, 450 F.3d 786, 787–88 (8th Cir. 2006) (reversible error because the court's response should "disabuse the jury of its mistaken belief that an irrelevant matter is important to its verdict.").

Here, the result from the court's failure to instruct the jurors that attorneys' fees were not an issue before the jury would be the same as if the *Schmitz* court had answered "no" – jurors were at least implicitly permitted to consider Mimms' fees out of concern he would otherwise not be compensated.  The fact that Mimms did not introduce any evidence of actual damages, and could identify no reputational damage for the Trial Statements, increased the likelihood that the jury's large verdict was based in part on an improper award of attorney's fees rather than just the permissible presumed damages.

Given the jurors' existing confusion over the instructions, the court should have expressly instructed that consideration of attorneys' fees was not relevant to any damages analysis. Particularly where, as here, (1) attorneys' fees are not recoverable, *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 832 (Ind. 2011); *Carson v. Palombo*, 18 N.E.3d 1036, 1047 (Ind. Ct. App. 2014), (2) plaintiff's counsel

asked Mimms about his attorneys' fees, and (3) the damages instruction identified recoverable damages as "including but not limited to" categories, the jurors should have been instructed in order to disabuse them of their focus on an irrelevant issue and prevent them from improperly inflating the award to account for them. As a result, the jurors were left with a misunderstanding of the law and left to an unguided damages determination likely resulting in the inclusion of an impermissible category of damages in its $1,025,000 award. Accordingly, vacatur and remand for a new trial is warranted.

## CONCLUSION

CVS seeks relief to address the district court's errors below. CVS requests that the Court reverse the district court's denial of summary judgment and enter summary judgment in favor of CVS on the four Trial Statements because imputation cannot be applied to establish actual malice, a necessary element of defamation. Alternatively, CVS seeks: (1) reversal of the district court's admission of imputation evidence and remand for a new trial excluding imputation evidence; (2) reversal and remand for new trial to correct the court's incorrect jury instruction regarding "ill will" evidence as support of the plaintiff's actual malice burden; and (3) reversal and remand for new trial allowing CVS to present evidence of Mimms' false interrogatory answer, mitigating circumstances, and truth of the DEA investigation. Finally, CVS seeks reversal and remand for a new trial due to the district court's erroneous handling of the jury's question during deliberations, and requests reassignment pursuant to 7th Cir. R. 36.

Respectfully submitted,


s/ Alice M. Morical
Alice M. Morical
Amanda L.B. Mulroony
HOOVER HULL TURNER LLP
111 Monument Circle, Suite 4400
P.O. Box 44989
Indianapolis, IN  46244-0989
317-822-4400 (telephone)
317-822-0234 (facsimile)
amorical@hooverhullturner.com
amulroony@hooverhullturner.com

Attorneys for the Defendant-Appellant,
CVS Pharmacy, Inc.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1)

This brief complies with the type-volume limitation of 7th Cir. R. 32(c) because this brief contains 11,937 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

s/ Alice M. Morical
Alice M. Morical

## CERTIFICATE OF COMPLIANCE WITH RULE 30(d)

Pursuant to 7th Cir. R. 30(d), I hereby certify that all materials required by 7th Cir. R. 30(a) and (b) are included in the appendix.

s/ Alice M. Morical
Alice M. Morical

## PROOF OF SERVICE

Pursuant to Fed. R. App. P. 25, I certify that on July 19, 2017, I served a copy of the foregoing document electronically on all registered counsel through the Court's EM/ECF system.

s/ Alice M. Morical
Alice M. Morical

890308v5

## REQUIRED SHORT APPENDIX

Pursuant to 7th Cir. R. 30(d), I certify that all materials required by 7th Cir. R. 30(a) and (b) are included in this appendix and the separate appendix.

s/ Alice M. Morical
Alice M. Morical

## TABLE OF CONTENTS

Entry on Pending Motions
(January 3, 2017) (Dkt. 143) ........................................................................SA-1

Entry on Motion for Partial Reconsideration
(February 23, 2017) (Dkt. 211) ..................................................................SA-28

Order on Parties' Motions *in Limine*
(February 27, 2017) (Dkt. 219) ..................................................................SA-39

Order on Defendant's Second Motion for Partial Reconsideration
(March 15, 2017) (Dkt. 250) ......................................................................SA-59

Verdict Form
(March 31, 2017) (Dkt. 294) ......................................................................SA-71

Final Judgment
(March 31, 2017) (Dkt. 296) ......................................................................SA-73

891470

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANTHONY MIMMS, M.D., and MIMMS FUNCTIONAL REHABILITATION, P.C., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 1:15-cv-00970-TWP-MJD |
| CVS PHARMACY, INC., a Rhode Island corporation, | ) ) ) | |
| Defendant. | ) ) ) | |
| INDIANA ATTORNEY GENERAL, Medicaid Fraud Control Unit, | ) ) ) | |
| Interested Party. | ) ) | |

## <u>ENTRY ON PENDING MOTIONS</u>

This matter is before the Court on the parties' Cross-Motions for Summary Judgment. On

May 20, 2015, Plaintiff Anthony Mimms ("Dr. Mimms") filed a Complaint alleging defamation,

tortious interference with contractual relationships and tortious interference with a business

relationship against Defendant CVS Pharmacy, Inc., ("CVS"). On June 15, 2016, Dr. Mimms filed

a Motion for Partial Summary Judgment on behalf of himself and his business, Mimms Functional

Rehabilitation, P.C., ("MFR") (Filing No. 71). On that same date, CVS filed a Cross Motion for

Summary Judgment (Filing No. 74). Also pending is a Motion to Strike Certain Defendant's

Affirmative Defenses filed by Dr. Mimms, (Filing No. 58), a Motion to Amend Witness and

Exhibit Lists filed by CVS (Filing No. 127), and a Motion to Supplement Summary Judgment

Record filed by CVS (Filing No. 130).  For the following reasons, the Court **denies in part and**

**grants in part** the parties' Cross-Motions for Summary Judgment, **denies** Dr. Mimms' Motion to

Strike, **grants** CVS's Motion to Amend Witness List, and **denies** CVS's Motion to Supplement Summary Judgment Record.

## I.     BACKGROUND

The dispute in this matter surrounds Dr. Mimms' claims that CVS employees at numerous Indiana locations, uttered false and defamatory statements to his patients, causing him to suffer embarrassment, damage to himself and his practice and loss of clients from his pain management practice. Dr. Mimms is a physician who resides in Indianapolis, Indiana.  In 2004, Dr. Mimms was licensed with the Indiana Medical Licensing Board. As such, he was licensed and registered to prescribe drugs classified by the United States Drug Enforcement Administration ("DEA") as Schedule I, II, IID, III, IIID, IV and V ("prescriptions").  In November 2013, Dr. Mimms resigned from a practice with Rehabilitation Associates of Indiana ("RAI") and started his own pain management practice, MFR. Thereafter, employees at various CVS stores within the Southern District of Indiana refused to fill prescriptions prescribed by Dr. Mimms.

In late 2013, Cynthia Miller, a patient of Dr. Mimms, traveled to CVS Store #4633 located in Greenfield, Indiana to refill a prescription written by Dr. Mimms.  (Filing No. 73-10.)  A CVS employee informed Miller that they were not filling prescriptions written by Dr. Mimms because he was under investigation by the DEA.  *Id.*  Later that same day, Miller returned to the same CVS store with her husband and talked to Richard, a CVS pharmacy manager.  *Id.* at 3.  Richard repeated that CVS did not fill prescriptions written by Dr. Mimms because he was under DEA investigation. *Id.* at 4.

On June 24, 2014, Terry McIntosh traveled to CVS Store #4633 to gather information regarding narcotic pain medications he had previously taken.  (Filing No. 73-4 at 2.)  While at the CVS store, Anthony, a CVS pharmacist, stated that CVS does not fill prescriptions for Dr. Mimms.

2

*Id*. Anthony then compared Dr. Mimms to a pill mill and explained that pill mills are physicians "who just parade patients one after another through their office writing prescriptions. Some get kickbacks, some give them, they over-write the prescriptions too because they get kickbacks." *Id*.

In October 2014, Judith Mason attempted to get a prescription written by Dr. Mimms filled at CVS Store #4633, but a CVS employee informed Mason that they refuse to fill any prescription written by Dr. Mimms. (Filing No. 73-2 at 2.) Mason then traveled to CVS Store #0045 located on Pendleton Pike in Indianapolis. *Id*. There, Alexis Field ("Field"), a CVS pharmacy technician, stated that Dr. Mimms was under investigation by the DEA and that Mason should find another doctor. *Id*. Field admits that she made the statement. (Filing No. 73-3 at 4.)

Kim Petro ("Petro") also informed Dr. Mimms that she went to CVS Store #6645 located in Rushville, Indiana to refill a prescription that he had written. (Filing No. 73-7 at 8.) Dana, a CVS technician, informed Petro that they could not fill prescriptions written by Dr. Mimms because he went to jail and is a bad doctor. *Id*. at 9. Another patient of Dr. Mimms, Jerame Smith ("Smith"), traveled to a CVS store to fill a prescription written by Dr. Mimms, and a CVS pharmacy technician named Jason looked at the prescription, looked over at something on the wall and then informed Smith that he could not fill the prescription because Dr. Mimms was under DEA investigation. (Filing No. 73-9 at 6.) Jason further stated, "well, either they think your doctor is a pill pusher or he doesn't care about his clients or he's a shady doctor." *Id*.

Most recently, Dr. Mimms' patient Deborah Doyle-Blanton ("Blanton") informed Dr. Mimms that, on March 4, 2015, a Caucasian CVS employee with dark hair and a lean build at CVS Store #7541 located in McCordsville, Indiana, stated that Dr. Mimms had been under investigation and arrested for controlled substances, and if he was not arrested then Dr. Mimms would soon be arrested. The employee suggested that Blanton find a new doctor. (Filing No. 73-1 at 2.)

3

Blanton's brother, David Seeman, who is not Dr. Mimms' patient, also informed Dr. Mimms that

a CVS employee at Store #6594 refused to fill a prescription written by Dr. Mimms for Blanton.

(Filing No. 73-5 at 2.)  The employee stated that Dr. Mimms' license was revoked and that it was

best that Blanton go to another doctor.  *Id.*  Seeman described the CVS employee as a young

Caucasian woman.  *Id*. at 6.

On February 10, 2014, Dr. Mimms filed a Consumer Complaint against CVS with the

Indiana Attorney General's Office, complaining that CVS stores across Indiana were refusing to

fill his patients prescriptions.  (Filing No. 73-11 at 2-3.)  On May 23, 2014, the Indiana Attorney

General's Office sent Dr. Mimms a letter stating that it was closing his Complaint against CVS,

but provided no other information.  *Id*. at 6.  On November 17, 2014, DEA agent Madeline Kuzma

and Amy Andercyk from the Indiana Attorney General's Office visited CVS regarding CVS's

refusal to fill Dr. Mimms' prescriptions.  (Filing No. 73-13 at 2.)  The agents asked whether there

were other doctors that concerned CVS.  *Id*.  Thereafter, on May 20, 2015, Dr. Mimms filed this

action against CVS in Marion Superior Court on behalf of himself and MFR, asserting defamation,

tortious interference with contractual relationships, and tortious interference with a business

relationship.  (Filing No. 1-2.)  On June 19, 2015, CVS removed the case to federal court.  CVS

disputes that its employees made any actionable defamatory statements, and contends that if the

employees did make defamatory statements, they are protected by a qualified privilege.  Both

parties move for summary judgment.

## II.    LEGAL ANALYSIS

The purpose of summary judgment is to pierce the pleadings and to assess the proof in

order to see whether there is a genuine need for trial."  *Matsushita Electric Industrial Co. v. Zenith*

*Radio Corp*., 475 U.S. 574, 587 106 S. Ct. 1348 (1986).  Under Federal Rule of Civil Procedure

SA-000004

56, summary judgment is appropriate only where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor."  *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."  *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007) (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence."  *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact.  *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003).  The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648.  "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made."  *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

SA-000005

# III.    DISCUSSION

Dr. Mimms moves this Court for partial summary judgment on the defamation claim only, arguing that the statements made by CVS are defamatory *per se*.  CVS cross motions for summary judgment, contending that the statements are inactionable opinions, true statements or protected by qualified privilege.  CVS also seeks summary judgement on the tortious interference claims, arguing they fail as a matter of law.

## A.    Motion to Strike (Filing No. 58)

As an initial matter, Dr. Mimms asks the Court to strike certain affirmative defenses filed by CVS.  Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The Court may, (1) act on its own, or (2) on a motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.  *Id.*  Motions to strike are generally disfavored; however, "where . . .  motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay."  *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

On May 5, 2016, in reply to Dr. Mimms' Complaint, CVS filed an Amended Answer asserting thirteen affirmative defenses.[1]  Dr. Mimms argues that defenses four through eleven are legal conclusions and CVS failed to plead any short and plain statements of facts as required under Indiana law.  Affirmative defenses that are "nothing but bare bones conclusory allegations", that

---

[1] 1) Failure to state a claim for which relief can be granted, 2) qualified privilege, 3) inactionable opinions, 4) truth, 5) innocent construction rule, 6) doctrine of unclean hands, 7) public concern, 8) failure to mitigate damages, 9) doctrine of comparative fault, 10) doctrine of waiver, 11) lack of standing, 12) statutory immunity, 13) Dr. Mimms did not suffer actual damages. (Filing No. 57 8-11.)

6

"omit[] any short and plain statement of facts and fail[] … to allege the necessary elements of the alleged claims" should be stricken.  *Id*.

In response, CVS argues that the Court should deny the Motion to Strike because it is untimely.  CVS filed its original Answer and affirmative defenses on November 5, 2015, which included defenses one through eleven, and also filed a Motion for Leave to File an Amended Answer on April 15, 2016.  Dr. Mimms filed his Motion to Strike on May 10, 2016, five days after CVS filed its Amended Answer.  CVS asserts that Dr. Mimms should have filed his Motion within 21 days after the original Answer, or prior to the Court granting CVS's Motion for Leave on May 5, 2016.  Under Rule 12(f), a party may move to strike within 21 days after being served with the pleading if no response is required.  Fed. R. Civ. P. 12(f)(2).

The operative pleading in this case is the Amended Answer.  S*ee Heckler & Koch, Inc. v. German Sport Guns GmbH*, 71 F. Supp. 3d 866, 878 (S.D. Ind. 2014) (holding defendants' motion to strike plaintiffs' answer was moot where plaintiffs filed an amended answer because "amended answers, like amended complaints, supersede a previous pleading").  Accordingly, Dr. Mimms Motion to Strike is timely, because it was filed five days after service of CVS's Amended Answer, well within the 21 day requirement.

CVS argues that the Motion to Strike fails on the merits, and should be denied because CVS satisfied the "short and plain" statement requirement and Dr. Mimms was sufficiently notified of the defenses.  "A pleading that states a claim for relief must contain… a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Defenses four through eleven are as follows:

> **Fourth Affirmative Defense**: Plaintiffs' claims are barred because truth is a complete defense to defamation claims. Any statement of fact made by CVS Pharmacy's employees, alleged to be false but true, is inactionable.

SA-000007

**Fifth Affirmative Defense:** Plaintiffs' claims are barred by the innocent construction rule. Accordingly, if any alleged defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning must be rejected and the innocent meaning adopted.

**Sixth Affirmative Defense:** Plaintiffs' claims are barred by the doctrine of unclean hands.

**Seventh Affirmative Defense:** Plaintiffs' claims involve alleged statements about a matter of public concern. Therefore, Plaintiffs may not recover presumed damages in the absence of a showing by Plaintiffs by clear and convincing evidence that a statement was published with actual malice as defined in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).

**Eighth Affirmative Defense:** To the extent Plaintiffs have failed to mitigate, minimize, or otherwise avoid any alleged losses or damages, Plaintiffs' damages claim must be reduced accordingly.

**Ninth Affirmative Defense**: Plaintiffs' claims are barred by the doctrine of comparative fault.

**Tenth Affirmative Defense:** Plaintiffs' claims are barred by the doctrine of waiver.

**Eleventh Affirmative Defense:** Plaintiffs' claims are barred by their lack of standing.

(Filing No. 57.) The Court agrees with Dr. Mimms that CVS failed to allege the necessary elements for each affirmative defense and the affirmative defenses contain "conclusory allegations" and omit a short and plain statement of the facts. *See Perez v. PBI Bank, Inc.*, No. 1:14- CV-01429-SEB, 2015 WL 500874, at *6 (S.D. Ind. Feb. 4, 2015) (citing *Heller*, 883 F.2d at 1295). However, in his Motion for Partial Summary Judgment, Dr. Mimms provides details which show that sufficient discovery has taken place to afford Dr. Mimms adequate notice of the affirmative defenses. *See id*. at 8 (holding an affirmative defense must provide a plaintiff fair notice of the grounds underlying each defense). For this reason, the Court **denies** Dr. Mimms' Motion to Strike CVS's affirmative defenses four through eleven.

SA-000008

B.    **Defamation**

Dr. Mimms moves this Court for partial summary judgment, arguing that CVS, by and through its employees, defamed him.  To maintain an action for defamation a plaintiff "must demonstrate (1) a communication with a defamatory imputation; (2) malice; (3) publication; and (4) damages." *Kelly v. Tanoos*, 865 N.E.2d 593, 596-97 (Ind. 2007). "A defamatory communication is one that 'tend[s] to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person.'" *Id.* at 596 (quoting *Rambo,* 587 N.E.2d 140, 145 (Ind.Ct.App.1992)).

Under Indiana law, defamation *per se* exists when a statement, without reference to extrinsic evidence, imputes: "(1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Id.*  "If words spoken convey such a message, they are deemed obviously and naturally harmful such that separate proof of their injurious character is not needed."  *Worldwide Battery Co., LLC v. Johnson Controls, Inc.,* No. 1:06CV00602 DFHTAB, 2006 WL 3201915, at *4 (S.D. Ind. July 7, 2006).  CVS does not dispute the "publication" element and agrees that in an action for defamation *per se* a plaintiff "is entitled to presumed damages 'as a natural and probable consequence' of the *per se* defamation." *Id.* at 597 (quoting *Rambo v. Cohen,* 587 N.E.2d at 145).  Accordingly, the issues before the Court are whether (1) a communication with a defamatory imputation and (2) malice exist.

1.    **Communication with a Defamatory Imputation**

Dr. Mimms contends that CVS, through its employees, defamed him with the following statements:

- "Dr. Mimms' license has been suspended or revoked;"
- "Dr. Mimms has been arrested, and if he hasn't been, he soon would be, therefore [] find a new doctor;"

9

SA-000009

- "CVS no longer fills prescriptions for Dr. Mimms because Dr. Mimms has been to jail, and is a bad doctor;"
- "Dr. Mimms is under DEA investigation;" and
- "CVS doesn't fill Dr. Mimms' prescriptions or prescriptions for any other pill mills."

([Filing No. 72 at 6](#).)  Dr. Mimms asserts that he has never been arrested, his license has never been revoked or suspended, and he has no knowledge regarding a DEA investigation.  He argues that these assertions amount to defamation *per se* because they imply that he engaged in criminal conduct and was unable to freely practice medicine or write prescriptions.  Dr. Mimms contends that the statements are straightforward and leave no susceptibility to either a defamatory or nondefamatory interpretation.  "Whether a communication is defamatory or not is a question of law for the court, unless the communication is susceptible to either a defamatory or nondefamatory interpretation—in which case the matter may be submitted to the jury."  *Kelley*, 865 N.E.2d at 596 (citation omitted).  "In making the determination, the communication is to be viewed in context and given its plain and natural meaning, 'according to the idea they are calculated to convey to whom [it is] addressed.'"  *Rambo*, 587 N.E.2d at 145 (citing *Jacobs v. City of Columbus*, 454 N.E.2d 1253, 1264 (Ind. Ct. App. 1983); *Martin v. Indiana Bell Tel. Co.*, 415 N.E.2d 759 (Ind. Ct. App. 1981)).

### 2.    MFR's Defamation Claim

CVS first argues, and Dr. Mimms does not dispute, that MFR cannot assert a defamation claim because Dr. Mimms failed to allege that any defamatory remarks were made regarding MFR.  The Court agrees.  Accordingly, Dr. Mimms' Motion for Partial Summary Judgment is **denied** regarding his defamation claim on behalf of MFR and CVS's Motion for Summary Judgment is **granted** on this claim.  *See Lee v. Weston*, 402 N.E.2d 23, 26 (Ind. Ct. App. 1980)

SA-000010

(observing "defamation is personal to the plaintiff, and cannot be founded on the defamation of another").

### 3. **Dr. Mimms' Defamation Claim**

CVS relies on *Bagwe* and *Houk*, when asserting that Dr. Mimms' defamation argument fails because the witness statements of Seeman, Petro, Mr. and Mrs. Miller, and Smith lack foundation and did not identify when the alleged statements were made and who made them. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.,* No. 11 CV 2450, 2014 WL 4413768, at *15 (N.D. Ill. Sept. 5, 2014) (holding "the testimony of an individual who did not personally witness the alleged defamatory statement" and did "not identify the source of the [communication]" is inadmissible for lack of foundation and hearsay); *Houk v. Vill. of Oak Lawn*, No. 86 C 139, 1987 WL 7498, at *2 (N.D. Ill. Feb. 26, 1987) (foundation for affidavits "should include information as to (1) when and where the conversation occurred, (2) who was present and (3) who said what to whom"). CVS argues that Seeman, Petro, Mr. and Mrs. Miller, and Smith failed to provide names of CVS employees who made the statements and asserts that the names that they did offer were "generic first names" that Dr. Mimms has not tied to an identifiable CVS employee. CVS also contends that the witnesses failed to identify specific dates. CVS further asserts that a material dispute of fact exists and Dr. Mimms' partial summary judgment motion should be denied because Petro testified that an employee named Dana stated that they could not fill prescriptions written by Dr. Mimms anymore because he went to jail and is a bad doctor. Dana Flynn, a former CVS pharmacy technician, contends that she never made that statement.

In response, Dr. Mimms argues that CVS's reliance on *Bagwe* is misplaced, because unlike the witness in *Bagwe* who did not personally witness any alleged defamatory statement and could not identify the source of the statement, Dr. Mimms' witnesses personally witnessed the statements

SA-000011

made by CVS employees.  Dr. Mimms contends that every witness identified the store location they were in when they heard the statements, some witnesses identified the exact date, and most of his witnesses identified the employees by name, while others described how the employees looked.  Dr. Mimms further argues that CVS should not be granted summary judgment because some witness cannot remember the names of CVS employees where CVS refused to cooperate during discovery in providing the names and photographs of employees at the locations where statements were made, to facilitate identifying the individuals involved by name.

In reply, CVS again relies on *Bagwe* when contending that the testimonies of Seeman, Petro, Mr. and Mrs. Miller, and Smith lack foundation, but also asserts that a material issue of disputed fact exists regarding Blanton's testimony. Blanton testified that a Caucasian CVS employee with dark hair and a lean build stated that Dr. Mimms had been under investigation and arrested for controlled substances, and if he was not arrested then Dr. Mimms would soon be arrested. CVS provided redacted time records of employees who worked on March 4, 2015, at Store #7541 (Filing No. 99-15), and contends that Michael Salazar and Ryan Durham are the only CVS employees who fit Blanton's description. Both employees submitted sworn declarations asserting that they never made the statement to Blanton.  (Filing No. 110-1: Filing No. 110-2).

The Court agrees with Dr. Mimms that CVS's reliance on *Bagwe* is misplaced.  As Dr. Mimms persuasively argues, unlike the witness in *Bagwe* who did not personally witness any alleged defamatory statement and could not identify the source of the statement, Dr. Mimms identified with specificity the statements made, where they were made, and identified or described who made the statements.

The Court finds that, when viewed in context and given its plain and natural meaning, the statements:  "Dr. Mimms' license has been suspended or revoked;" "Dr. Mimms has been arrested,

SA-000012

and if he hasn't been, he soon would be, therefore, [] find a new doctor;" "CVS no longer fills prescriptions for Dr. Mimms because Dr. Mimms has been to jail, and is a bad doctor;" and "Dr. Mimms is under DEA investigation" amount to communications with defamatory imputation. Even without reference to extrinsic evidence, the above statements impute that Dr. Mimms was involved in criminal conduct as well as misconduct in his profession as a physician. Accordingly, the Court determines the above statements are defamatory *per se*.

CVS next argues that the statement "find a new doctor," and referring to Dr. Mimms as a "bad doctor," a "pill pusher" and a "pill mill" are statements of opinion. "A statement is not defamatory unless it conveys a defamatory imputation *of fact*—and 'loose, figurative, or hyperbolic language [may] negate the impression that the writer was seriously maintaining' that his assertion is factual. *Brewington v. State,* 7 N.E.3d 946, 960 (Ind. 2014) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990)). CVS contends that the meaning of these statements are subjective and whether Dr. Mimms is a "pill mill" or "pill pusher" is susceptible to multiple meanings. In response, Dr. Mimms contends only that CVS's former employee, Anthony, after comparing Dr. Mimms to a "pill mill," explained that "pill mill physicians" are those who overwrite prescriptions to get kickbacks. Dr. Mimms argues that this statement goes beyond mere opinion and implies that he engaged in misconduct in his trade, profession, office, or occupation. A statement "categorized as [an] 'opinion' rather than [a] 'fact' is not dispositive." *McQueen v. Fayette Cty. Sch. Corp.*, 711 N.E.2d 62 (Ind. Ct. App. 1999). "[T]he dispositive question is whether a reasonable fact finder could conclude that the statement implies facts which may be proven true or false." *Id*. at 66. "[A]n idea or opinion that conveys a defamatory imputation of fact, even if couched in humor, can be actionable." *Hamilton v. Prewett*, 860 N.E.2d 1234 (Ind. Ct. App. 2007) (citations omitted).

SA-000013

The Court agrees with Dr. Mimms and finds the statement that Dr. Mimms is operating a "pill mill" is not "loose, figurative, or hyperbolic language" because a reasonable fact finder could conclude that the statement implies facts which may be proven true or false.  Anthony not only defined "pill mill," but, in its Cross-Motion for Summary Judgment, CVS contends that because Dr. Mimms is a high prescriber of controlled substances, a CVS employee has ample reason to consider Dr. Mimms a "pill mill" or "pill pusher."  Therefore, the Court finds that the statement by Anthony that, "CVS doesn't fill Dr. Mimms' prescriptions or prescriptions for any other 'pill mills,'" is not a mere opinion.

With respect to the statements that Dr. Mimms is a "bad doctor" or "shady doctor" and his patient needed to "find a new doctor," the Court concludes, and Dr. Mimms does not dispute, that these phrases are subjective, "unverifiable statements of opinion." *See Eversole v. Spurlino Materials of Indianapolis, LLC*, 804 F. Supp. 2d 922, 937 (S.D. Ind. 2011).

CVS lastly asserts that Dr. Mimms' defamation claim fails because the statements regarding the DEA investigating Dr. Mimms are true.  Under Indiana law, "[t]rue statements never give rise to liability for defamation."  *N. Indiana Pub. Serv. Co. v. Dabagia*, 721 N.E.2d 294, 301 (Ind. Ct. App. 1999) (citing *Conwell v. Beatty,* 667 N.E.2d 768, 774 (Ind.Ct.App.1996)).  CVS presents testimony from CVS employees that DEA and Indiana Attorney General agents visited CVS stores in late 2013 seeking records relating to Dr. Mimms and his patients.  CVS contends that the DEA and Indiana Attorney General agents made repeated visits to CVS stores and informed CVS that they were looking into Dr. Mimms' prescribing practices.  CVS further argues that the DEA's ongoing review, monitoring, and inquiries relating to Dr. Mimms' practices, and repeated requests to produce documents from CVS and RAI, Dr. Mimms' former employer, make it clear that Dr. Mimms was under investigation during the relevant time period.

14

SA-000014

In response, Dr. Mimms contends that CVS failed to properly present evidence regarding the DEA and Indiana Attorney General agents' visits to CVS in 2013, and asserts that the DEA and Indiana Attorney General's Office never issued subpoenas regarding Dr. Mimms' prescribing practices.  Dr. Mimms asserts that the DEA and Indiana Attorney General's Office issued subpoenas for RAI's patient files, and at that time he was no longer an employee at RAI.  Dr. Mimms also states that no regulatory or governmental agency provided documentation that he has ever been arrested, his medical license was revoked or suspended, or that he operates a pill mill. Dr. Mimms contends that these statements are not true and there is no justification for them.

The Court finds that CVS has not presented sufficient evidence that the DEA and Indiana Attorney General's Office were investigating Dr. Mimms.  CVS contends that agents visited CVS stores in late 2013 seeking records related to Dr. Mimms and his patients, however, CVS produced no evidence or records that the agents subpoenaed and received any records from CVS relating to Dr. Mimms and his patients during the relevant time period.  Additionally, the subpoenas that CVS produced as evidence are insufficient because the DEA and Indiana Attorney General's Office requested records and information from RAI, well after Dr. Mimms stopped working there, and the subpoenas did not mention Dr. Mimms.  (Filing No. 77-32; Filing No. 77-33.)  Accordingly, because there is not sufficient evidence that Dr. Mimms was under DEA investigation during the alleged time period, CVS's affirmative defense of truth fails and summary judgment is not warranted.

### 4. <u>Malice</u>

Dr. Mimms does not contest that he is a "public figure," which requires that he prove CVS acted with actual malice.  Under Indiana law, "actual malice" means a defendant knew that a

SA-000015

defamatory statement was false or was recklessly indifferent to whether it was true or false.

*Desnick v. Am. Broad. Companies, Inc.*, 233 F.3d 514, 517 (7th Cir. 2000).

> "Reckless indifference" denotes [] knowledge by the defendant that there was a high risk of harm to the plaintiff coupled with a failure to take any feasible measure to counter the risk, either by investigating further to see whether there really is a risk and how serious it is or by desisting from the risky activity.

*Id*. Dr. Mimms contends that CVS, through its employees, acted with malice when they continued to publish false statements about his ability to freely practice medicine and falsely stating that Dr. Mimms had been or would be arrested. Dr. Mimms asserts that information regarding a suspended license or an arrest are not only available to the public, but CVS has sufficient resources to investigate and determine if the statements are true. Dr. Mimms argues that CVS's actions amounted to "reckless indifference."

In its Cross Motion for Summary Judgment, CVS relies on *Brewington* when contending that Dr. Mimms failed to prove that any CVS employee "entertained serious doubts as to the truth of [the allegedly defamatory] statements" or had a "high degree of awareness of their probable falsity" when making the statements. *See Brewington*, 7 N.E.3d at 960 ("actual malice does not hinge on whether [d]efendant's claims are true or false, nor even whether they are objectively reasonable… [i]nstead, it is a matter of his subjective sincerity—whether he 'in fact entertained serious doubts as to the truth of' those statements…, or had a 'high degree, of awareness of their probable falsity'"). CVS argues that the DEA and Indiana Attorney General agents repeatedly visited CVS stores seeking information about Dr. Mimms and the employees were aware of the visits. CVS also contends that Dr. Mimms is a high prescriber of controlled substances and, because of this, CVS employees had great reason to believe that Dr. Mimms was under DEA investigation, a "pill mill," or a "pill pusher." CVS further contends that the employees did not

SA-000016

act with malice, or bore any ill will toward Dr. Mimms, when stating that "Dr. Mimms has been…or will be arrested."

In response, Dr. Mimms designated evidence showing that CVS published specific protocols to its stores and pharmacy employees for dealing with customers and refusing to fill prescriptions. CVS protocol CVS00186 instructs that pharmacists must deliver information directly to the patient and communicate the reason why they are refusing to fill the prescription. (Filing No. 140 at 25). The protocol provides examples of what pharmacists should explain when refusing to fill a prescription, such as: "I am not comfortable filling this prescription" or "due to company guidelines, I am unable to fill your prescription." CVS protocols CVS00186, as well as CVS00011, additionally states as follows:

> **Under no circumstances are you to make any disparaging comments about the customer's prescriber**. Examples of disparaging comments include, but are not limited to the following:
>
> - The prescriber is under investigation by the DEA or local police
> - The prescriber is under investigation by CVS
> - The prescriber is operating a pill mill
> - The prescriber is going to lose his or her license
> - The prescriber is going to jail/should go to jail/may go to jail
> - The prescriber is a criminal, about to be arrested, should be arrested, etc.…

CVS00011 and CVS00186 (emphasis in original). (Filing No. 140 at 25-26). CVS pharmacist, Christian Krenk confirmed being familiar with the protocol, that all pharmacists were familiar with the protocol, and conceded that the above statements are "serious statements to make and they need to be founded in truth." (Filing No. 140 at 21; Filing No. 113-14 at 6-7).

The Court concludes, although CVS contends that its employees had great reason to believe the statements, Dr. Mimms presented sufficient evidence to raise a question of fact regarding whether CVS employees acted with actual malice when stating:  Dr. Mimms is a "pill mill" and a

SA-000017

"pill pusher," "Dr. Mimms' is under investigation by the DEA," and "Dr. Mimms has been…or will be arrested" because CVS's own policy warns against making those "disparaging comments." The Court also finds, and CVS does not dispute, that the statement "Dr. Mimms' license has been suspended or revoked" was made with actual malice. Accordingly, the parties' Cross-Motions for Summary Judgment regarding Dr. Mimms' defamation claim is **granted in part and denied in part**.

### 5.  Qualified Privilege

Finally, CVS contends that all of the statements are protected by a qualified privilege, therefore, Dr. Mimms' defamation claim fails. A qualified privilege rebuts the element of malice when the alleged defamatory remarks are "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992) (quoting *Chambers v. American Trans Air, Inc.,* 577 N.E.2d 612, 615 (Ind. App. Ct. 1991)). "The protection arises from the need for full and unrestricted communication regarding matters on which the parties have a common interest or duty." *Boydston v. Chrysler Credit Corp.*, 511 N.E.2d 318, 320 (Ind. Ct. App. 1987). "The scope of the qualified privilege is not amenable to a fixed or precise definition and must adapt to current societal interest and particular situations." *Williams v. Tharp*, 914 N.E.2d 756, 765 (Ind. 2009). Absent a factual dispute, whether a statement is protected by a qualified privilege is a question of law. *Bals*, 600 N.E.2d at 1356 (citing *Lawson v. Howmet Aluminum Corp.*, 449 N.E.2d 1172, 1175 (Ind. Ct. App. 1983)).

CVS asserts that its employees had a duty to warn patients and withhold prescriptions because pharmacists are required to "'exercise [their] professional judgment in the best interests

SA-000018

of the patient's health while engaging in the practice of pharmacy.'" *See Kolozsvari v. Doe*, 943 N.E.2d 823, 827 (Ind. Ct. App. 2011) (quoting Ind. Code § 25-26-13-16). (Ind. 1994)). CVS contends that a pharmacist's duty of care is based on the fact that "[i]t is a matter of common understanding that customers rely upon pharmacists for [their] expertise" regarding the dispensing of prescription drugs. *See Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 517 (Ind. 1994). CVS relies on *Lefrock* when arguing that the statements made by its employees regarding Dr. Mimms is subject to qualified privilege because CVS and its customers share a common interest regarding the customers' health, treatment, and their doctor's prescribing practices. *See Lefrock v. Walgreens Co.,* 77 F. Supp. 3d 1199, 1202 (M.D. Fla. 2015) (statements made by Walgreens' pharmacists to customers about a prescribing doctor's medical reputation were privileged). CVS asserts that Dr. Mimms' witnesses agreed that patients share a relationship with their pharmacists and seek advice and counseling in furtherance of their medical treatment. CVS also contends that the witnesses agreed that whether a prescribing physician was engaged in illegal or unethical behavior is information they want to know and is relevant to their medical treatment.

CVS further argues that the remaining requirements under qualified immunity are met because each statement was made solely to the customer, or their designated agent for filling their prescriptions, when the customer presented a prescription or asked a question regarding Dr. Mimms and controlled substances. CVS contends that the statements were limited to the scope of Dr. Mimms and his prescriptions practices and there is no evidence of bad faith because the evidence demonstrates that its employees had ample reason to believe that their statements were true.

In response, Dr. Mimms contends that CVS's argument fails because the law that CVS relies on regards only licensed pharmacists. Dr. Mimms asserts that qualified immunity does not

SA-000019

apply because CVS's employees were not pharmacists, but rather, pharmacy technicians. Dr.
Mimms argues that pharmacy technicians do not have the same duties and responsibilities as
pharmacists and are not entitled to the protections of a qualified privilege. *See* Ind. Code Ann.
§ 25-26-19-2 (a "pharmacy technician is an individual who: (1) works under the direct
supervision of a pharmacist licensed under this article; and (2) performs duties to assist a
pharmacist in activities that do not require the professional judgment of a pharmacist"). Dr.
Mimms further argues that the statutes and cases cited by CVS do not stand for the proposition
that "pharmacy employees share a common interest with its customers regarding the customers'
health, treatment, and prescribers." (Filing No. 95 at 16). Dr. Mimms contends that *Kolozsvari*
recognized that pharmacists, rather than all pharmacy employees, owe a duty of reasonable care
to customers, but did not determine what that duty entails. Dr. Mimms acknowledges that *Lefrock*
is factually similar to the instant case, but argues that *Lefrock* is inapplicable because the court
determined that qualified immunity applied where pharmacists had a state law duty to "give
general advice" to its customers. Dr. Mimms contends that no Indiana statute or case law exist
that creates a similar duty on pharmacists.

The Court finds that qualified privilege does not apply to pharmacy technicians, because
as Dr. Mimms persuasively argues, Indiana laws regarding licensed pharmacist and pharmacy
technicians are different. Under Indiana law, pharmacy technicians are prohibited from providing
certain advice or consultation to patients and from performing any activity required by law to be
performed only by a pharmacist. Ind. Code § 25-26-19-8. The case law and statutes that CVS
relies on refers only to licensed pharmacists. In addition, the statements at issue were particularly
disparaging and went beyond the scope of the purposes for which qualified privilege exists.
Accordingly, CVS is not entitled to summary judgment motion on this affirmative defense.

20

C.      **Tortious Interference with Contractual Relationship and Business Relationship**

CVS also moves for summary judgment on Dr. Mimms' tortious interference claims.  CVS asserts that these claims fail as a matter of law because CVS did not cause any breach of contract between Dr. Mimms and his patients and CVS did not interfere with any business relationships between Dr. Mimms and his patients.

A plaintiff alleging tortious interference with a contractual relationship must establish five elements:  (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of the breach of the contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach.  *Allison v. Union Hosp., Inc.,* 883 N.E.2d 113, 118 (Ind. Ct. App. 2008).

A cause of action for tortious interference with a business relationship is the same as that for tortious interference with a contract, "except there is no requirement that a valid contract exists."  *Furno v. Citizens Insurance Company of America,* 590 N.E.2d 1137, 1140 (Ind. App. 1992).  Tortious interference with a business relationship claim requires nearly the identical elements, except "the plaintiff must also show the existence of a protectable business relationship rather than a contract."  *Rice v. Hulsey*, 829 N.E.2d 87, 91 (Ind. Ct. App. 2005).  It also "requires some independent illegal action."  *Id. (quoting Brazauskas v. Fort Wayne–South Bend Diocese, Inc.,* 796 N.E.2d 286, 291 (Ind. 2003).

CVS acknowledges that Dr. Mimms maintains an agreement amongst his patients that limits his patients to filling their prescription at CVS stores.  Dr. Mimms explained that it makes it easier to track, builds relationships with pharmacists, and prevents the appearance that patients are pharmacy hopping.  (Filing No. 75 at 37).  CVS, however, argues that despite its refusal to fill Dr. Mimms' prescriptions, the agreement between Dr. Mimms and his patients was not breached,

21

nor did CVS interfere with a business relationship, because Dr. Mimms did not lose a single patient. CVS contends that, even if its conduct resulted in a breach of contract or interference with a business relationship, it was justified in making the statements and Dr. Mimms did not provide evidence that he suffered any damages as a result of CVS's actions.

In response to CVS's Motion for Summary Judgment, Dr. Mimms does not address the tortious interference claims. Dr. Mimms does not put forward any evidence that CVS interfered with any contracts between him and his patients or his business relationship, nor does he dispute the above assertions made by CVS. Without more information the Court cannot reasonably find that CVS interfered with Dr. Mimms' contracts or business relationships. Accordingly, summary judgment is **granted** to CVS with respect to Dr. Mimms' claims of tortious interference with contractual and business relationships. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver," and "silence leaves us to conclude" a concession.); *Myers v. Thoman*, 2010 U.S. Dist. LEXIS 107502, at *11 (S.D. Ind. Oct. 6, 2010) ("The Seventh Circuit has clearly held that a party who fails to respond to points made . . . concedes those points.").

## D.    <u>Motion to Supplement Summary Judgment Record (Filing No. 130)</u>

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may give an opportunity to properly support or address the fact. Fed. Rule Civil Procedure 56-1(e)(1). CVS seeks leave, pursuant to local rule 56-1, to supplement its Motion for Summary Judgment, asserting that after filing and briefing its summary judgment motion, CVS received additional documents establishing that Dr. Mimms was under investigation. CVS contends that the supplement includes: (1) publicly-available transcripts from a criminal trial proceeding of one of three former patients of Dr. Mimms

22

identified on a subpoena CVS received from the DEA on July 8, 2016; (2) publicly-available certified copies of the death certificates of the remaining two former patients identified on the DEA subpoena; and (3) a letter dated August 8, 2016, from the Department of Health and Human Services to CVS, requesting certain documents "[p]ursuant to an official federal criminal investigation into Dr. Anthony Mimms' prescribing methods . . ." (Filing No. 130). CVS argues that these documents are each highly relevant as they—individually and cumulatively—establish that in 2014, at the time the statements by CVS employees occurred, Dr. Mimms was "under DEA investigation." CVS contends that, on February 25, 2014, then-Health and Human Services Agent, David White, testified that he was conducting a criminal investigation into Dr. Mimms' practice in December 2012. Agent White further testified that he referred the investigation to the DEA for further proceedings. CVS argues that this testimony demonstrates, unequivocally, that Dr. Mimms was "under investigation" and "under DEA investigation."

In response, Dr. Mimms contends that Local Rule 56-1 does not allow for belated supplementation, rather, the rule lays out strict filing deadlines. Dr. Mimms argues that CVS's Motion to Supplement is well outside the required discovery time period and the transcript that CVS seeks to admit is irrelevant and would inflame and mislead a jury. Dr. Mimms states that if the Court admits the transcript he would suffer prejudice because he lacked the opportunity to cross-examine the witnesses involved. Dr. Mimms also contends that the transcript concerns the testimony of a Health and Human Service investigation rather than a DEA investigation. Dr. Mimms next argues that the letter CVS received is well outside the relevant time frame presented by the facts, lacks foundation, is inadmissible hearsay, and does not relate to a DEA investigation. Lastly, Dr. Mimms asserts that the death certifications are inadmissible because they lack foundation.

23

The Cross-Motions for Summary Judgment have been ripe for ruling since August 2016 and the inclusion of the proposed supplements would require additional briefing, possible delay and prejudice to Dr. Mimms.  In addition, the Court finds that the death certificates and the Health and Human Services letter that CVS received on August 8, 2016 are not relevant regarding whether CVS defamed Dr. Mimms from late 2013 to 2015 or CVS's defense of truth.  More importantly, after reviewing the evidence, despite the criminal trial of Dr. Mimms' former patient occurring in 2014, the Court finds the transcript and testimony of Agent White insufficient to establish that Dr. Mimms was being investigated during the relevant time period.  Agent White testified that he investigated Dr. Mimms in late 2012, but did not conduct further investigation thereafter.  (Filing No. 131-1 at 31, 34, 49.)  Also, although, Agent White testified that he referred the investigation to the DEA for further proceedings, there is no evidence that the DEA actually investigated Dr. Mimms during the time alleged in the Complaint.  The subpoenas that CVS produced from the DEA and the Indiana Attorney General's Office are addressed to Dr. Mimms' former employer, RAI.  (Filing No. 77-32; Filing No. 77-33.)  Not only do the subpoenas list more than Dr. Mimms' three purported former patients, but the subpoenas were issued well after Dr. Mimms resigned from working at RAI.[2]  (Filing No. 77-35.)  Accordingly, because the proffered supplements are untimely, highly disputed and of questionable relevance, CVS's Motion to Supplement the Summary Judgment Record is **denied**.

**E.  Motion to Amend Witness and Exhibit Lists.**

Finally, CVS seeks to amend its trial exhibit list to include: (1) a subpoena and documents issued by the DEA and served upon CVS on July 8, 2016, seeking the production of documents

---

[2] Dr. Mimms resigned on November 5, 2013 and the subpoenas from the DEA and Indiana Attorney General's Office were issued on June 17, 2014 and June 18, 2014, respectively.

SA-000024

relating to three former patients of Dr. Mimms, (2) transcript excerpts from the criminal trial proceedings of one of Dr. Mimms' former patients, (3) death certificates of the remaining two former patients identified on the DEA subpoena, and (4) a letter dated August 8, 2016 from the Department of Health and Human Services. CVS further seeks leave to amend its trial witness list to include Special Agents David White and Connie Murray to testify to the existence of criminal investigations regarding Dr. Mimms.

Dr. Mimms objects to the amended exhibits and witnesses because their disclosure is untimely and irrelevant. The standard for exclusion of a witness based on late disclosure is the totality of the circumstances. In determining whether the late disclosure is harmless, the Court considers: (1) prejudice or surprise to the party against whom the evidence is offered, (2) ability of the party to cure the prejudice, (3) the likelihood of disruption of the trial, and (4) bad faith and willfulness involved in not disclosing at an earlier date. *See Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012). CVS has adequately explained the late disclosure of the two witnesses and the exhibits, and there is no allegation of bad faith. The trial on this matter is nearly three months away, and CVS can be ordered to pay the costs for depositions of the witnesses so as to cure any prejudice to Dr. Mimms. The question of whether the proposed exhibits and witnesses are relevant to any issues remaining for trial is one to be determined on another day. Accordingly, CVS's Motion to Amend its trial witness and exhibit lists is **granted.** CVS shall make its newly discovered witnesses available for deposition and shall be responsible for the reasonable expenses associated with said depositions.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Dr. Mimms' Motion for Partial Summary Judgment (Filing No. 71), and CVS's Motion for Summary Judgment (Filing No. 74), **are GRANTED in part and**

SA-000025

**DENIED in part.**  Dr. Mimms' Motion to Strike (Filing No. 58.) is **DENIED.**  CVS's Motion for Leave to Amend its Witness and Exhibit Lists (Filing No. 127) is **GRANTED** and CVS's Motion to Supplement Summary Judgment Record (Filing No. 130) is **DENIED**.

The Court grants CVS's Motion for Summary Judgment with respect to Dr. Mimms' claims for tortious interference of contractual and business relationships.

The Court finds that the statement "Dr. Mimms' license has been suspended or revoked" is defamatory *per se*.  Accordingly, Dr. Mimms' Motion for Partial Summary Judgment regarding this statement is granted and CVS's Motion for Summary Judgment is denied.

The Court finds that the following statements are defamatory: "Dr. Mimms is under DEA investigation," "CVS doesn't fill Dr. Mimms' prescriptions or prescriptions for any other pill mills," "CVS no longer fills prescriptions for Dr. Mimms because Dr. Mimms has been to jail," and "Dr. Mimms has been arrested, and if he hasn't been, he soon would be."  However, a genuine issue of material fact remains whether any of the defamatory statements were made with malice. In addition, a genuine issue of material fact remains regarding Petro's testimony that a CVS employee named Dana made the statement, and Blanton's testimony that a Caucasian employee with dark hair and lean build made the defamatory statement. Accordingly, the parties' Cross-Motions for Summary Judgment on these statements are denied. The issues remaining for trial are the defamation claim with respect to Petro's and Blanton's testimony, whether the defamatory statements were made with malice, and Dr. Mimms' damages.

**SO ORDERED.**

Date: 1/3/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

26

SA-000026

DISTRIBUTION:

Jason D. May
jason.may@jasonmaylaw.com

Jonathan W. Garlough
FOLEY & LARDNER LLP
jgarlough@foley.com

Robert H. Griffith
FOLEY & LARDNER LLP
rgriffith@foley.com

Amanda Elizabeth Fiorini
INDIANA ATTORNEY GENERAL
Amanda.Fiorini@atg.in.gov

Dennis E. Mullen
INDIANA ATTORNEY GENERAL
dennis.mullen@atg.in.gov

SA-000027

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| ANTHONY MIMMS, M.D., and MIMMS FUNCTIONAL REHABILITATION, P.C., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:15-cv-00970-TWP-MJD |
| CVS PHARMACY, INC., a Rhode Island corporation, | ) ) ) | |
| Defendant. | ) ) | |
| ———————————————————— | ) ) | |
| INDIANA ATTORNEY GENERAL, Medicaid Fraud Control Unit, | ) ) ) | |
| Interested Parties. | ) ) | |

## ENTRY ON MOTION FOR PARTIAL RECONSIDERATION

This matter is before the Court on a Motion for Reconsideration of Order on Parties' Motions for Summary Judgment ("Motion for Partial Reconsideration") (Filing No. 150), filed pursuant to Federal Rule of Civil Procedure 59(e) by Defendant CVS Pharmacy, Inc. ("CVS"). On May 20, 2015, Plaintiff Anthony Mimms ("Dr. Mimms") filed a Complaint alleging defamation, tortious interference with contractual relationships and tortious interference with business relationships. (Filing No. 1-2 at 7-13.) On January 3, 2017, following cross-motions for summary judgment, the Court granted in part and denied in part CVS's Motion for Summary Judgment, and granted in part and denied in part Dr. Mimms' Motion for Partial Summary Judgment ("Order"). (Filing No. 143.) Thereafter, on January 24, 2017, CVS filed this Motion for Partial Reconsideration, asserting the Court erred in applying incorrect legal standards. (Filing No. 150.) Thereafter, CVS filed a Request for Summary Ruling on its Motion for Partial

Reconsideration of the Court's Order on the Parties' Motions for Summary Judgment (Filing No. 157), noting that Dr. Mimms did not respond to CVS's Motion.  For the following reasons, the Court **grants** CVS's Motion for Summary Ruling and **grants in part and denies in part** CVS's Motion for Partial Reconsideration.

## I.    BACKGROUND

The dispute in this matter surrounds Dr. Mimms' claims that CVS employees at numerous Indiana locations uttered false and defamatory statements to his patients, causing him to suffer embarrassment, damage to himself and his practice, and loss of clients from his pain management practice.  The facts of this case are set forth in detail in the Entry on Pending Motions (Filing No. 143) and will therefore only be summarized as needed in this Entry.

On May 20, 2015, Dr. Mimms filed this action against CVS in Marion Superior Court on behalf of himself and Mimms Functional Rehabilitation, P.C. ("MFR"), asserting defamation, tortious interference with contractual relationships, and tortious interference with a business relationship.  (Filing No. 1-2.)  On June 19, 2015, CVS removed the case to federal court.  CVS disputes that its employees made any actionable defamatory statements, and contends that if the employees did make defamatory statements, they are protected by qualified privilege.

Both parties moved for summary judgment and, on January 3, 2017, the Court granted in part and denied in part CVS's Motion for Summary Judgment and granted in part and denied in part Dr. Mimms' Motion for Partial Summary Judgment.  (Filing No. 143.)  CVS's Motion for Summary Judgment was granted with respect to MFR's defamation claim.  *Id*. at 10-11.  With respect to Dr. Mimms' defamation claims, the Court specifically concluded, among other things, the statement to David Seeman that "Dr. Mimms' license has been suspended or revoked" was defamatory *per se*.  In addition, the Court found that the statements to Jerame Smith, Judith Mason,

SA-000029

Cynthia Miller, and William Miller that "Dr. Mimms is under DEA investigation," the statement to Terry McIntosh that "CVS doesn't fill Dr. Mimms' prescriptions or prescriptions for any other pill mills," the statement to Kim Petro that "CVS no longer fills prescriptions for Dr. Mimms because Dr. Mimms has been to jail," and the statement to Deborah Doyle-Blanton that "Dr. Mimms has been arrested, and if he hasn't been, he soon would be" were defamatory; however, a genuine issue of material fact remained regarding whether any of the defamatory statements were made with actual malice.  The Court also denied CVS's qualified privilege claim.

CVS now asks the Court to reconsider its judgment asserting that the Court misapprehended the applicable law relating to malice and qualified privilege.  (Filing No. 150.)

## II.    LEGAL STANDARD

The purpose of a motion to alter or amend judgment under Rule 59(e) is to ask the court to reconsider matters properly encompassed in a decision on the merits.  *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989).  A Rule 59(e) motion will be successful only where the movant clearly establishes:  (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.  *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013); *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010).  Relief pursuant to a Rule 59(e) motion to alter or amend is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).  In this regard, a manifest error is not demonstrated by merely presenting "the disappointment of the losing party." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (a manifest error is "the wholesale disregard, misapplication, or failure to recognize controlling precedent.").  Further, a motion to alter or amend a judgment is not an opportunity to "relitigate motions or present arguments, issues, or facts that could and should have been presented earlier." *Brownstone Publ'g, LLC v. AT&T,*

SA-000030

*Inc.*, No. 1:07-CV-1630-SEB, 2009 WL 799546, at *3 (S.D. Ind. Mar. 24, 2009).  *See also*

*Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007).

## III.    DISCUSSION

CVS asks the Court to reconsider its Entry, because the Court applied the incorrect legal

standard for actual malice and improperly found that Dr. Mimms presented legally sufficient

evidence relating to the testimonies of David Seeman, Jerame Smith, Danny Smith and Cynthia

Miller and William Miller.  CVS also argues that the Court erred in concluding that qualified

privilege does not apply to its pharmacy technicians.  As an initial matter, the Court notes that Dr.

Mimms did not respond to CVS's Motion, accordingly, pursuant to Local Rule 7-1(c)(4), the Court

now summarily rules on CVS's pending Motion, and CVS's Request for Summary Ruling (Filing

No. 157) is **granted**.

### A.    Indiana's Actual Malice Standard.

CVS argues persuasively that the Court erred in its application of Indiana's "actual malice"

standard.  Specifically, CVS asserts that the Court incorrectly concluded:

> [u]nder Indiana law, 'actual malice' means a defendant knew that a defamatory
> statement was false or was recklessly indifferent to whether it was true or false…
> 'Reckless indifference' denotes [] knowledge by the defendant that there was a
> high risk of harm to the plaintiff coupled with a failure to take any feasible measure to
> counter the risk, either by investigating further to see whether there really is a risk
> and how serious it is or by desisting from the risky activity.

*Desnick v. Am. Broad. Companies, Inc.*, 233 F.3d 514, 517 (7th Cir. 2000).

CVS notes that the Court's reliance on *Desnick* was a mistake of law because *Desnick*

reflects the proper actual malice standard under federal law, rather than Indiana state law.  Relying

on *Nikish*, CVS asserts that the standard for actual malice under Indiana law differs materially

from the federal standard because "mere negligence or failure to investigate is not sufficient to

4

establish malice." *See Nikish Software Corp. v. Manatron, Inc.*, 801 F. Supp. 2d 791, 799 (S.D. Ind. 2011). The Court agrees with CVS.

"Actual malice exists when 'the defendant publishes a defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* (quoting *Poyser v. Peerless*, 775 N.E.2d 1101, 1107 (Ind. Ct. App. 2002)). Under Indiana law, "[t]o demonstrate reckless disregard, there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication or proof that the false publication was made with a high degree of awareness of their probable falsity." *Journal–Gazette Co., Inc. v. Bandido's Inc.,* 712 N.E.2d 446, 456 (Ind.1999). A critical factor in the actual malice determination is the defendant's state of mind, which "is a subjective fact that may be shown by indirect or circumstantial evidence." *Poyser*, 775 N.E.2d at 1107.

In his Motion for Partial Summary Judgment, Dr. Mimms asserted that CVS acted with malice by continuing to publish false statements about Dr. Mimms' ability to freely practice medicine and falsely stating that Dr. Mimms had been or would be arrested. In response, Dr. Mimms argued that information regarding a suspended license or an arrest are not only available to the public, but CVS has sufficient resources to investigate and determine if the statements were true. Dr. Mimms argued that CVS's actions amounted to "reckless indifference." In addition, Dr. Mimms presented evidence of CVS's protocol stating:

**Under no circumstances are you to make any disparaging comments about the customer's prescriber**. Examples of disparaging comments include, but are not limited to the following:

- The prescriber is under investigation by the DEA or local police
- The prescriber is under investigation by CVS
- The prescriber is operating a pill mill
- The prescriber is going to lose his or her license
- The prescriber is going to jail/should go to jail/may go to jail
- The prescriber is a criminal, about to be arrested, should be arrested, etc....

5

SA-000032

CVS00011 and CVS00186 (emphasis in original).   (Filing No. 140 at 25-26).  In its Entry on

Pending Motions, the Court concluded:

> although CVS contends that its employees had great reason to believe the
> statements, Dr. Mimms presented sufficient evidence to raise a question of fact
> regarding whether CVS employees acted with actual malice when stating:  Dr.
> Mimms is a "pill mill" and a "pill pusher," "Dr. Mimms' is under investigation by
> the DEA," and "Dr. Mimms has been…or will be arrested" because CVS's own
> policy warns against making those "disparaging comments." The Court also finds,
> and CVS does not dispute, that the statement "Dr. Mimms' license has been
> suspended or revoked" was made with actual malice.

(Filing No. 143 at 17-18.)

CVS argues that the Court erred in its conclusion, regarding only the statements: "Dr.

Mimms' license has been suspended or revoked," Dr. Mimms is a "pill pusher," and "Dr. Mimms'

is under investigation by the DEA," because there is no evidence of the employees' state of mind.

CVS contends that Dr. Mimms needs to show more than a mere failure to investigate and further

asserts that an employee's deviation from company policy does not establish that the employees

acted with the requisite actual malice when statements were made to David Seeman, Jerame Smith,

Danny Smith, and Mr. and Mrs. Miller.

The Court agrees.  The Court first notes that Dr. Mimms' defamation claim nor the Court's

Entry mention or rely on statements made to Danny Smith.  The Court, however, concludes,

regarding the statements made to David Seeman, Jerame Smith, and  Mr. and Mrs. Miller, that Dr.

Mimms has not offered any evidence that the employees had "serious doubts as to the truth" or

"held a high degree of awareness" that the statements were false.  *See Nikish*, 801 F. Supp. 2d at

799 ("reckless conduct is not measured by whether a reasonable prudent man would have

published, or would have investigated before publishing") (citations omitted).   Accordingly,

because there is no direct, indirect, or circumstantial evidence denoting the employees' state of

SA-000033

mind, CVS's Motion for Summary Judgment is **granted** regarding statements made to David Seeman, Jerame Smith, and Mr. and Mrs. Miller.  Therefore, Dr. Mimms' Partial Motion for Summary Judgment is **denied** as to these statements.

Because the Court grants CVS's Motion for Summary Judgment on Dr. Mimms' defamation claim regarding the testimonies of David Seeman, Jerame Smith, and Mr. and Mrs. Miller, the Court need not address CVS's alternative claim that the testimonies of these witnesses lack foundation.

**B.     Qualified Privilege.**

CVS next argues that the Court erred when concluding that qualified privilege does not apply to CVS's pharmacy technicians, because qualified privilege is not limited to a legal duty based on existing statutes or common law.  The Court's Order concluded that qualified privilege does not apply to pharmacy technicians:

> because … Indiana laws regarding licensed pharmacist [sic] and pharmacy technicians are different.  Under Indiana law, pharmacy technicians are prohibited from providing certain advice or consultation to patients and from performing any activity required by law to be performed only by a pharmacist.  Ind. Code § 25-26-19-8. The case law and statutes that CVS relies on refers only to licensed pharmacists.  In addition, the statements at issue were particularly disparaging and went beyond the scope of the purposes for which qualified privilege exists.

(Filing No. 143 at 20.)  The Court agrees that qualified privilege is not limited to a legal duty and clarifies that its conclusion is tailored to the facts and arguments of this case, and is not meant to suggest that qualified privilege never applies to pharmacy technicians.

The crux of CVS's qualified privilege argument in its Motion for Summary Judgment was that in "Indiana, both statutory and common law mandates that *pharmacists* owe a duty of care to patients and the general public."  (Filing No. 75 at 31.) (Emphasis added.)  CVS is now attempting to assert that its Motion for Summary Judgment argued that legal, social and moral duties existed

7

to give rise to a qualified privilege for pharmacy technicians.  For its proposition, CVS points to the statement, "[a]s both the patient witnesses and CVS pharmacists testified, pharmacy employees share a common interest with its customers regarding the customers' health, treatment, and prescribers."  *Id.* at 33.  CVS's Motion goes on to state, "[i]n fact, each CVS Pharmacy retail store at issue contains a consultation area, specifically designed for patients to *consult with pharmacists* to get information pertaining to their medical treatment and seek advice." *Id.* (emphasis added). CVS further contended that Dr. Mimms' "patients agreed that they share a patient relationship with their *pharmacists*, and seek advice and counseling in furtherance of their medical treatment." *Id.* (emphasis added).  CVS continued discussing pharmacists and their duties to patients, while relying on cases that speak only to pharmacists.  *See Lefrock v. Walgreens Co.,* 77 F. Supp. 3d 1199, 1202 (M.D. Fla. 2015) (statements made by Walgreens' pharmacists to customers about a prescribing doctor's medical reputation were privileged); *Kolozsvari v. Doe*, 943 N.E.2d 823, 827 (Ind. Ct. App. 2011) (discussing a pharmacist's duties to patients under statutory law).

Thereafter, in its Reply Brief, CVS relied on Indiana statutes—Ind. Code Ann. § 25-26-19-5 and Ind. Code Ann. § 23-26-19-2—when arguing that qualified privilege "applied equally to pharmacy technicians, who often serve as the initial point of contact for a patient dropping off and/or picking up their prescription." (Filing No. 114 at 24.)  This prompted the Court to conclude that pharmacists and pharmacy technicians are different because, despite CVS's contention, under Indiana law, pharmacy technicians are prohibited from providing certain advice or consultation to patients and from performing any activity required by law to be performed only by a pharmacist. *See* Ind. Code § 25-26-19-8.  (Filing No. 143 at 20.)  Accordingly, because CVS's qualified privilege argument, case law, and statutes focused exclusively on the duties of pharmacists, the Court concluded that qualified privilege does not apply to CVS's pharmacy technicians.

The Court clarifies its Order and finds that qualified privilege also does not apply to CVS's pharmacists.  The Court agreed with Dr. Mimms' contention that the cases and statutes relied on by CVS have no bearing on the issues before the Court.  *See* Ind. Code Ann. § 25-26-13-2 (pharmacists' duties include: "[c]ounseling, advising, and educating patients, patients' caregivers, and health care providers and professionals, as necessary, *as to the contents, therapeutic values, uses, significant problems, risks, and appropriate manner of use of drugs and devices*.") (emphasis added); *Kolozsvari*, 943 N.E.2d at 827 (recognizing that pharmacists, rather than pharmacy employees, owe a duty of reasonable care to customers, but did not determine what that duty entails); *Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 515 (Ind. 1994) (recognizing that pharmacists have a duty to cease refilling a dangerous drug prescription where a customer refills at an unreasonably faster rate than the rate prescribed); *Lefrock*, 77 F. Supp. 3d at 1202 (holding qualified privilege applies to statements made by Walgreens' pharmacists to customers about a prescribing doctor's medical reputation where pharmacists had a state law duty to "give general advice" to its customers while filling prescriptions).

The Court finds that, despite CVS's contention that pharmacists have a legal duty to patients and pharmacy employees share a common interest with its customers, no Indiana statute or case law exist that creates a legal, social or moral duty on pharmacists, or pharmacy technicians for that matter, to "give general advice" to customers regarding their physician's personal reputation or alleged medical reputation.  To the contrary, CVS's own policy warns against it. Accordingly, reconsideration of CVS's qualified immunity claim is **denied**.

CVS also takes issue with the Court's assertion that "the statements at issue were particularly disparaging and went beyond the scope of the purposes for which qualified privilege exists."  (Filing No. 143 at 20.)  CVS contends that the Court erred to the extent that it concluded

SA-000036

an abuse of privilege as a matter of law.  The Court concludes, because qualified privilege does not apply, CVS's Motion for reconsideration of this issue is **denied**.

## IV.     <u>CONCLUSION</u>

For the aforementioned reasons, CVS's Request for Summary Ruling (<u>Filing No. 157</u>) is **GRANTED**.  The Court **GRANTS in part and DENIES in part** CVS's Motion for Partial Reconsideration (<u>Filing No. 150</u>).  The Court vacates its prior order and finds that Dr. Mimms has not proven actual malice regarding the statements made to Cynthia Miller, William Miller, David Seeman, and Jerame Smith.  Accordingly, CVS's Motion for Summary Judgment on Dr. Mimms' defamation claim as it relates to Jerame Smith, Mr. Seeman, and Mr. and Mrs. Miller is **GRANTED,** and Dr. Mimms' Motion for summary judgment on these claims is **DENIED**.  In addition, the Court clarifies that qualified privilege does not apply to either CVS's pharmacy technicians or pharmacists; accordingly, CVS's Motion for Reconsideration on the issue of qualified privilege is **DENIED**.

The issues remaining for trial are the defamation claim with respect to Terry McIntosh's, Judith Mason's, Kim Petro's and Deborah Doyle-Blanton's respective testimonies that a CVS employee stated:  1) "CVS doesn't fill Dr. Mimms' prescriptions or prescriptions for any other pill mills"; 2) "Dr. Mimms is under DEA investigation"; 3) "Dr. Mimms went to jail"; and 4) "Dr. Mimms has been…or will be arrested" and whether the defamatory statements were made with malice, as well as Dr. Mimms' claims for damages.

**SO ORDERED**.

Date: 2/23/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

10

SA-000037

DISTRIBUTION:

Jason D. May
jason.may@jasonmaylaw.com

Jonathan W. Garlough
FOLEY & LARDNER LLP
jgarlough@foley.com

Robert H. Griffith
FOLEY & LARDNER LLP
rgriffith@foley.com

Alice McKenzie Morical
HOOVER HULL TURNER LLP
amorical@hooverhullturner.com

Amanda L.B. Mulroony
HOOVER HULL TURNER LLP
amulroony@hooverhullturner.com

Andrew W. Hull
HOOVER HULL TURNER LLP
awhull@hooverhullturner.com

Amanda Elizabeth Fiorini
INDIANA ATTORNEY GENERAL
Amanda.Fiorini@atg.in.gov

Dennis E. Mullen
INDIANA ATTORNEY GENERAL
dennis.mullen@atg.in.gov

SA-000038

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTHONY MIMMS, M.D., MIMMS FUNCTIONAL REHABILITATION, P.C., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 1:15-cv-00970-TWP-MJD ) |
| CVS PHARMACY, INC. a Rhode Island corporation, | ) ) ) |
| Defendant. | ) ) |
| ———————————————— | ) ) |
| INDIANA ATTORNEY GENERAL, Medicaid Fraud Control Unit, | ) ) ) |
| Interested Parties. | ) ) ) |

## <u>ORDER ON PARTIES' MOTIONS IN *LIMINE*</u>

This matter is before the Court on the parties' Motions in *Limine*. Plaintiff Anthony Mimms ("Dr. Mimms") seeks to prohibit Defendant CVS Pharmacy, Inc. ("CVS") from introducing into evidence or providing testimony regarding seven topics (<u>Filing No. 158</u>). CVS's Motion in *Limine* seeks to prohibit evidence and testimony regarding fifteen topics (<u>Filing No. 175</u>). For the reasons stated below, the parties' respective motions in *limine* are **granted in part and denied in part.**

## I.    <u>LEGAL STANDARD</u>

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions in *limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The Court excludes evidence on a motion *in limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill.

1993).  Unless evidence meets this exacting standard, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."  *Id.* at 1400-01.  Moreover, denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the court is unable to determine whether the evidence should be excluded.  *Id.* at 1401.

## II.     DISCUSSION

The dispute in this matter surrounds Dr. Mimms' claims that CVS employees at numerous Indiana locations uttered false and defamatory statements to his patients, from late 2013 through 2015, which impute misconduct on the part of Dr. Mimms in his profession as a medical doctor and prescriber of medication.  Following rulings on the parties' cross motions for summary judgment and CVS's motion for reconsideration, the issues remaining for trial are Dr. Mimms' defamation claim with respect to Terry McIntosh's, Judith Mason's, Kim Petro's and Deborah Doyle-Blanton's respective testimonies that a CVS employee stated: 1) "CVS doesn't fill Dr. Mimms' prescriptions or prescriptions for any other pill mills"; 2) "Dr. Mimms is under DEA investigation"; 3) "Dr. Mimms went to jail"; and 4) "Dr. Mimms has been…or would…be arrested" and whether the defamatory statements were made with malice, as well as Dr. Mimms' claims for damages.  Dr. Mimms and CVS each seek an order *in limine* to prohibit the introduction of certain evidence and testimony during trial.  The Court will address the parties' Motions in turn.

### A.     **Dr. Mimms' Motion in *Limine* (Filing No. 158).**

Dr. Mimms moves in *limine* on seven topics.  CVS filed a Response on February 22, 2017, opposing each of Dr. Mimms' seven motions (Filing No. 204).

SA-000040

1.   **Any reference to Dr. Mimms' personal relationships, including alleged instances of marital infidelity.**

Dr. Mimms seeks to exclude any testimony or reference regarding his personal relationships including alleged instances of marital infidelity.  Dr. Mimms argues that any reference should be excluded pursuant to Indiana Rules of Evidence 401, 402, and 403[1], because it is irrelevant, constitutes improper character evidence, and is unduly prejudicial.  In response, CVS contends that Dr. Mimms admitted to having extramarital affairs during his employment at Rehabilitation Associates of Indiana, P.C. ("RAI").  Specifically, CVS contends that Dr. Mimms admitted to an extramarital affair with a nurse at Community Westview Hospital ("Westview") in 2013; thereafter, Westview administrators no longer desired to have Dr. Mimms provide services at their facility.  Following discovery of the affair, Dr. Mimms abruptly resigned from RAI without notice to his patients.  CVS also asserts that Dr. Mimms was suspended for 30 days in 2001, during his residency at William Beaumont Hospital, for inappropriate behavior with a female employee.  In addition, Dr. Mimms admits that he had an extramarital affair with a nurse at Community East Hospital in 2006.  CVS argues by suing for defamation, Dr. Mimms has put his character and professional reputation squarely at issue.  (Filing No. 204 at 4.)  CVS asserts evidence that Dr. Mimms has acted unprofessionally and misbehaved is directly relevant to Dr. Mimms' defamation claim, and his assertions of damages to his reputation.  *See Bularz v. Prudential Ins. Co. of Am.*, 93 F.3d 372, 379 (7th Cir. 1996) (reputation evidence was relevant to determine whether plaintiff's reputation was already compromised at the time that defendant allegedly defamed him, and thus to the jury's computation of damages).

---

[1] Throughout his briefing, Dr. Mimms' sites frequently to the Indiana Rules of Evidence.  As CVS pointed out, while the Court must apply state law to resolve substantive questions, it must apply federal law to resolve evidentiary issues. (Filing No. 204 at 9-10).  Fortunately, the Indiana Rules of Evidence closely model the federal rules, which the Court has applied in this order.

SA-000041

With respect to these instances of extramarital affairs, the Court is not persuaded that they are relevant to the issues at trial. That Dr. Mimms resigned abruptly from RAI without notice to his patients is relevant, but the discovery of Dr. Mimms' affair as the reason for his resignation is not relevant. The Court concludes that any mention regarding Dr. Mimms' personal relationships or marital infidelities is irrelevant and has no bearing on the defamation claim remaining for trial or the issue of damages. At issue is Dr. Mimms' professional reputation for acts such as over-prescribing medication or being under investigation by the DEA; not his reputation as a womanizer or adulterer. In addition, the probative value of the acts, some of which occurred as early as 2001 and 2006, is clearly outweighed by the risk of undue prejudice. Accordingly, the Court **grants** Dr. Mimms' Motion in *Limine* regarding his extramarital affairs.

2. <u>**Any reference that Dr. Mimms' committed sexual harassment or had inappropriate conversation with patients.**</u>

Next, Dr. Mimms seeks to exclude any testimony or reference alleging that he committed sexual harassment or had inappropriate conversations with his patients. Dr. Mimms again argues that reference to this evidence should be excluded pursuant to Indiana Rules of Evidence 401, 402, and 403, because it is irrelevant, constitutes improper character evidence, and is unduly prejudicial.

CVS seeks to offer evidence that RAI filed a complaint with the Indiana Attorney General in October 2013, relaying accounts of inappropriate conduct by Dr. Mimms towards a female patient. CVS contends that this as well as other "inappropriate behavior" resulted in Dr. Mimms' removal from RAI and Dr. Mimms' relationships with other medical entities and their perception of his professionalism is centrally important to Dr. Mimms' claim against them. CVS argues that because Dr. Mimms bases his purported damages on a lowered reputation amongst members of the medical community, evidence that he has acted unprofessionally and has received complaints

4

or discipline for such actions is directly relevant to Dr. Mimms' defamation claim, and his assertions of damages to his reputation.

The Court concludes that testimony alleging that Dr. Mimms committed sexual harassment or had inappropriate conversations with his patients is irrelevant and has no bearing on the defamation issue remaining for trial in this case. The Court, however, is unable to determine at this stage of the litigation whether evidence of inappropriate sexual conduct with patients might be relevant as it relates to damages. *See Bularz,* 93 F.3d at 378-379 (prior customer complaints, lawsuits, and testimony regarding unethical business practices were admissible and "relevant to determining whether Bularz's reputation was already compromised at the time that Prudential allegedly defamed him, and thus to the jury's computation of damages."). Accordingly, the Court **grants in part and denies in part** this section of Dr. Mimms' Motion in *Limine*.

### 3.     Any reference to criminal proceedings, investigations or charges against any party other than Dr. Mimms.

Dr. Mimms moves to exclude any reference to criminal proceedings, investigations or charges against any party other than himself pursuant to Indiana Rules of Evidence 401, 402, and 403, because it is irrelevant and serves to confuse or mislead the jury. Specifically, Dr. Mimms seeks to exclude evidence that witness Jerame Smith was convicted of a Class D felony for Theft on August 13, 2009. CVS argues in response, that such evidence is relevant to the credibility of Dr. Mimms' witness and admissible under Federal Rule of Evidence 609, subject to Rule 403's balancing test. Dr. Mimms has not demonstrated that the probative value of Smith's criminal conviction is substantially outweighed by a danger of unfair prejudice, misleading the jury, or any of the other risks identified in Rule 403. For this reason, the Court **denies** Dr. Mimms' Motion in *Limine* as it relates to Mr. Smith.

SA-000043

In addition, CVS seeks to offer into evidence under Federal Rule of Evidence 803(8), criminal records of three of Dr. Mimms' former patients who have been convicted of either dealing or improperly using controlled substances.  CVS argues these criminal records are probative to show the statement that Dr. Mimms was "under investigation" or "under DEA investigation" was true or belief could reasonably have been held, and thus was not made with actual malice; provides context to subpoenas the DEA issued to CVS and RAI regarding Mimms and his patients; and is relevant to Mimms' professional reputation.  The relevancy of these records appears to be remote, however, at this point in the litigation, it is difficult to determine the relevancy of these criminal records. In addition, there is little context on which to determine the admissibility of such evidence. The Court prefers not to make a determination outside the context of the trial on this issue, because an order in *limine* at this stage could bar potentially permissible evidence from being presented during trial.  Accordingly, the Motion in *Limine* on these criminal records is **denied**.

### 4.     Any reference to governmental or regulatory investigations relating directly or indirectly to RAI.

Dr. Mimms asks the Court to exclude any testimony or reference to governmental or regulatory investigations relating to RAI.  Dr. Mimms argues that any reference should be excluded pursuant to Indiana Rules of Evidence 401, 402, and 403, because it is irrelevant as the RAI investigations occurred outside the time period that the relevant defamatory statements at issue were made and serves to confuse or mislead the jury.  In response, CVS presents evidence of several instances where subpoenas were issued investigating RAI and requesting information regarding patients of Dr. Mimms.

The Court agrees with Dr. Mimms that investigations which occurred after the alleged defamatory statement were made are not relevant.  In particular, the Court previously ruled that the Health and Human Services letter that CVS received on August 8, 2016 is not relevant regarding

6

whether CVS defamed Dr. Mimms from late 2013 to 2015 or CVS's defense of truth.  (Filing No. 143 at 24.)  The Court also found that the subpoenas CVS produced from the DEA and the Indiana Attorney General's Office that are addressed to RAI, well after Dr. Mimms resigned from working at RAI[2], were not relevant.  *Id.*  In addition, the November 2016 visit by DEA agents and the Indiana State Police is not relevant.  To the extent that Dr. Mimms seeks to exclude the above evidence, the Court **grants** this section of Dr. Mimms' Motion in *Limine*.

The Court is unable, at this stage of litigation, to determine the admissibility of evidence relating to investigations of RAI which occurred between December 2012 and November 2014. Therefore, the determination of admissibility will be made by the Court in the context of the trial. Accordingly, this section of Dr. Mimms' Motion in *Limine* is **denied**.

### 5.    Any reference to patient complaints or statements made concerning Dr. Mimms prior to or during his employment with RAI.

Dr. Mimms seeks to exclude any testimony or reference to patient complaints or statements made concerning Dr. Mimms, prior to or during his employment at RAI.  Dr. Mimms argues that any reference should be excluded pursuant to Indiana Rules of Evidence 401, 402, and 403, because it is irrelevant as it occurred outside the time period that the relevant defamatory statements at issue were made and would confuse or mislead the jury.  In response, CVS again contends that patient complaints which resulted in Dr. Mimms' removal from RAI and other medical entities' perception of Dr. Mimms professionalism is centrally important to Dr. Mimms' claim against them.  CVS argues that because Dr. Mimms bases his purported damages on a lowered reputation amongst members of the medical community, evidence that Dr. Mimms has acted unprofessionally and has received complaints or discipline for such actions is directly

---

[2] Dr. Mimms resigned on November 5, 2013 and the subpoenas from the DEA and Indiana Attorney General's Office were issued on June 17, 2014 and June 18, 2014, respectively.

SA-000045

relevant to Dr. Mimms' defamation claim, and his assertions of damages to his reputation. As stated earlier, at this stage of litigation the Court declines to prohibit this evidence without any context regarding the specific patient complaints, when they were made and why they occurred. Accordingly, the Court **denies** this section of Dr. Mimms' Motion in *Limine*.

> **6.** **Any reference to medical information associated with Dr. Mimms' patients prior to or during his employment with RAI.**

Dr. Mimms seeks to exclude any testimony or reference to medical information associated with Dr. Mimms' patients prior to or during his employment with RAI. Dr. Mimms again argues that any reference should be excluded pursuant to Indiana Rules of Evidence 401, 402, and 403, because it is irrelevant as it occurred outside the time period that the relevant defamatory statements at issue were made and serves to confuse or mislead the jury. In response, CVS argues that prescription records for Dr. Mimms' former patients at RAI who were identified in the subpoenas issued to RAI and CVS by the DEA and or Indiana Attorney General are admissible to prove that Dr. Mimms was under DEA investigation during the relevant time period.

Although the Court declines at this stage of litigation to completely prohibit evidence referencing medical information associated with Dr. Mimms' patients prior to or during his employment at RAI, the Court notes that it previously ruled subpoenas from the DEA and the Indiana Attorney General's Office that were addressed to RAI, well after Dr. Mimms resigned from working at RAI[3], were of questionable relevance because the subpoenas were issued to RAI and listed more than Dr. Mimms' purported former patients. *Id.* To the extent that Dr. Mimms seeks to exclude the above evidence, the Court **grants** this section of Dr. Mimms' Motion in

---

[3] Dr. Mimms resigned on November 5, 2013 and the subpoenas from the DEA and Indiana Attorney General's Office were issued on June 17 and June 18, 2014, respectively.

SA-000046

*Limine*.  Accordingly, this section of Dr. Mimms' Motion in *Limine* is **granted in part and denied in part**.

### 7. <u>Any reference to the death of Dr. Mimms' patients or Dr. Mimms' former employers' patients.</u>

Finally, Dr. Mimms moves to exclude any testimony or reference regarding the death of his former patients or RAI's patients.  Dr. Mimms argues that any reference should be excluded pursuant to Indiana Rules of Evidence 401, 402, and 403, because it is irrelevant as it occurred outside the time period that the relevant defamatory statements at issue were made and serves to confuse or mislead the jury.  In response, CVS argues that four of Dr. Mimms' patients died in 2011 because of controlled substances and they were listed on a DEA subpoena sent to RAI.  CVS contends that the death certificates of the four patients is admissible because it proves that Dr. Mimms was under DEA investigation during the relevant time period.

For the same reasons stated above, the Court declines at this stage of litigation to completely prohibit evidence referencing the death of Dr. Mimms' former patients.  The Court, however,  notes that it previously ruled that the death certificates of two former patients identified on a DEA subpoena to RAI were not relevant regarding whether CVS defamed Dr. Mimms from late 2013 to 2015 or CVS's defense of truth.  ([Filing No. 143 at 24](#).)  To the extent that Dr. Mimms seeks to exclude evidence of these death certificates, the Court **grants** Dr. Mimms' Motion in *Limine*. With respect to the other two death certificates, a determination will be made at trial. Accordingly, this section of Dr. Mimms' Motion in *Limine* is **granted in part and denied in part**.

### B. <u>CVS's Motion in *Limine* ([Filing No. 175](#)).</u>

CVS moves in *limine* regarding fifteen topics.  Dr. Mimms filed a Response on February 22, 2017, opposing each of Dr. Mimms' fifteen Motions ([Filing No. 192](#)).

SA-000047

### 1.     Any reference to statements made by unidentified speakers.

CVS seeks exclusion of any testimony or reference to statements made by unidentified speakers.  CVS contends that Cynthia Miller, William Miller, David Seeman, and Jerame Smith failed to identify the speaker who made defamatory statements in their presence, and therefore, any reference to the statements should be excluded.  The Court notes that the issues remaining for trial are the defamation claim with respect to Terry McIntosh's, Judith Mason's, Kim Petro's and Deborah Doyle-Blanton's respective testimonies that a CVS employee stated: 1) "CVS doesn't fill Dr. Mimms' prescriptions or prescriptions for any other pill mills"; 2) "Dr. Mimms is under DEA investigation"; 3) "Dr. Mimms went to jail"; and 4) "Dr. Mimms has been…or would…be arrested" and whether the defamatory statements were made with malice, as well as Dr. Mimms' claims for damages.  Accordingly, because CVS contends that McIntosh, Mason, Doyle-Blanton and Petro offered sufficient evidence to identify the speaker who made defamatory comments, the Court **denies** this section of CVS's Motion in *Limine*.

### 2.     Any reference to defamatory statements that are not included in the depositions of Dr. Mimms' witnesses.

CVS seeks to exclude any testimony or reference to defamatory statements that are not included in the depositions of Dr. Mimms' witnesses.  CVS argues that any reference should be excluded because it is unduly prejudicial.  CVS states that the Court should, for example, exclude Dr. Mimms' testimony that "countless [patients] have relayed CVS defamatory statements" but he only "recorded" some.  In response, Dr. Mimms argues that a motion in *limine* is not the appropriate avenue to dismiss these statements, and contends that during a trial is the appropriate time to challenge statements that are not included in the witnesses' depositions.  Dr. Mimms contends that CVS may utilize Federal Rule of Evidence 607 to attack a witness' credibility with regard to what they testified to during deposition versus what they are testifying to under oath, as

10

well as hearsay objections under Federal Rule of Evidence 801 to the extent that no hearsay exception applies.

While substantially prejudicial evidence will not be allowed during trial, and the parties should not attempt to elicit such testimony, the Court declines at this stage of litigation to prohibit this evidence because CVS has not established that the probative value of such evidence is substantially outweighed by a danger of unfair prejudice. *See* Fed. R. Evid. 403. Accordingly, the Court **denies** this section of CVS's Motion in *Limine*.

### 3.     Any reference to an alleged speaker's mental state, unless the testimony derives from the alleged speaker.

CVS also moves to exclude any references or testimony from anyone other than the speakers of the defamatory statements, regarding the speakers' state of mind when making the statements. CVS argues that the Court should exclude any reference pursuant to Federal Rules of Evidence 403 and 701(b), because it amounts to an improper legal conclusion and is unfairly prejudicial. In the alternative, CVS asks the Court to permit it to impute all knowledge and information available as a corporate entity—specifically, DEA visits to CVS stores, statements by pharmacists that Dr. Mimms was under investigation, and testimony by pharmacists and pharmacy technicians regarding their relationships with patients— to the defamatory speakers. In response, Dr. Mimms argues that the Court should not exclude testimony about the speakers' temperament and body language, as observed at the time the statement was made by witnesses to the defamatory statements. Dr. Mimms contends that the evidence is relevant and excluding testimony about the speakers' temperament and conduct at the time would unfairly prejudice his case.

While improper legal conclusions and substantially prejudicial evidence will not be allowed during trial, and the parties should not attempt to elicit such testimony, the Court declines at this stage of litigation to prohibit this evidence because the speakers' state of mind, which "is a

SA-000049

subjective fact [] may be shown by indirect or circumstantial evidence." *Poyser v. Peerless*, 775

N.E.2d 1101, 1107 (Ind. Ct. App. 2002). For this reason, the Court **denies** this section of CVS's

Motion in *Limine*. The Court also **denies** CVS's alternative request because CVS does not provide

any evidentiary basis for imputing such knowledge and the Court previously found, as a matter of

law, that qualified privilege does not apply.

### 4. Any reference to CVS's failure to comply with discovery requests in efforts to identify speakers who made defamatory statements.

CVS asks the Court to exclude any testimony or reference to CVS's failure to comply with

discovery requests in efforts to identify the defamatory speakers, specifically regarding statements

made to Mr. and Mrs. Miller, Seeman, and Smith. CVS argues that any reference should be

excluded pursuant to Federal Rules of Evidence 401 and 403, because it is irrelevant and unduly

prejudicial. The Court previously found, as a matter of law, statements made to Mr. and Mrs.

Miller, Seeman, and Smith did not meet the defamation standard and this evidence is no longer

relevant. Accordingly, the Court **grants** this section of CVS's Motion in *Limine*.

### 5. Any reference to hearsay statements made to Dr. Mimms' patients.

CVS seeks to exclude any testimony or reference to hearsay statements made to Dr.

Mimms' patients by witnesses who are not called to testify at trial. CVS points to three statements:

1) Mrs. Miller's testimony that another patient of Dr. Mimms' informed her that CVS stated that

Dr. Mimms was "being investigated by the DEA"; 2) Mrs. Miller's testimony that "multiple

people" sitting in the waiting room at the RAI office "all said they heard…from CVS" that Dr.

Mimms "was being investigated by the DEA"; and 3) Doyle-Blanton's testimony that Seeman

informed her that a CVS representative stated that Dr. Mimms "had been arrested". CVS argues

that any reference should be excluded pursuant to Federal Rules of Evidence 401, 403, and 802,

because it is irrelevant, serves to confuse or mislead the jury, and amounts to inadmissible hearsay.

SA-000050

While irrelevant, substantially prejudicial, or hearsay evidence will not be allowed during trial, and the parties should not attempt to elicit such testimony, the Court declines at this stage of litigation to place a blanket prohibition on a broad category of testimony without any context to whether hearsay exception or exemption applies. Accordingly, the Court **denies** this section of CVS's Motion in *Limine*.

**6.      Allow CVS to offer evidence regarding qualified privilege.**

CVS seeks leave to offer evidence regarding the qualified privilege defense. CVS contends that the Court should find, or at least allow a jury to determine whether, a common interest privilege applies to all of the statements made by pharmacy technicians and that qualified privilege applies to pharmacists. In response, Dr. Mimms argues based on the Court's previous ruling, any attempts to include evidence of qualified privilege should be denied. The Court agrees with Dr. Mimms. Rule 56 provides a method whereby a court can narrow issues and facts for trial. The Court declines CVS's request to prove qualified privilege or offer evidence regarding qualified privilege, because the Court previously found as a matter of law that qualified privilege does not apply. Accordingly, the Court **denies** this section of CVS's Motion in *Limine*.

**7.      Any reference to punitive damages.**

CVS asks the Court to exclude any testimony or reference to punitive damages. CVS argues that Dr. Mimms failed to seek punitive damages as part of his Complaint and testified that he suffered only damages to his reputation. *See 1st Source Bank v. Rea*, 559 N.E.2d 381, 389 (Ind. Ct. App. 1990) (reversing the award of punitive damages in a debt collection case where the defendants, who alleged false representation, were awarded punitive damages but did not seek punitive damages in their counterclaim). CVS also contends that any reference should be excluded

SA-000051

pursuant to Federal Rules of Evidence 401and 403, because it is irrelevant and serves to confuse or mislead the jury.

In response, Dr. Mimms argues that the Court ruled that the statements: 1) "Dr. Mimms' license has been suspended or revoked"; 2) "Dr. Mimms has been arrested, and if he hasn't been, he soon would be, therefore, find a new doctor"; 3) "CVS no longer fills prescriptions for Dr. Mimms because Dr. Mimms has been to jail, and is a bad doctor"; and 4) "Dr. Mimms is under DEA investigation" are defamatory *per se* and amount to communications with defamatory imputation that Dr. Mimms.  Dr. Mimms asserts that in an action for defamation *per se* under Indiana law, a plaintiff "is entitled to presumed damages 'as a natural and probable consequence' of the *per se* defamation."  *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007) (citation omitted). Dr. Mimms contends that, as such, a jury may award a substantial sum for his presumed harm.

CVS did not dispute or seek reconsideration of the Court's finding that when viewed in context and given its plain and natural meaning, the statements to Judith Mason, Kim Petro and Deborah Doyle-Blanton that: 1) "Dr. Mimms is under DEA investigation"; 2) "Dr. Mimms has been to jail"; and 3) "Dr. Mimms has been…or would…be arrested" amount to communications with defamatory imputation. The Court concluded that the statements are defamatory *per se* because even without reference to extrinsic evidence, the above statements impute that Dr. Mimms was involved in criminal conduct as well as misconduct in his profession as a physician.  (Filing No. 143 at 12-13.) Moreover, in an action for defamation *per se,* a plaintiff "is entitled to presumed damages 'as a natural and probable consequence' of the *per se* defamation," as such, Dr. Mimms is allowed to seek substantial damages.  The Court notes that Dr. Mimms did not specifically file a claim for punitive damages in his Complaint and he has not submitted a proposed jury instruction

SA-000052

for punitive damages. Accordingly, the Court **grants** the motion with respect to reference of punitive damages, and instead will allow only reference to substantial damages.

### 8. <u>Any reference to CVS's corporate parent, wealth, or "deep pockets".</u>

CVS moves to exclude any testimony or reference to CVS's corporate parent, CVS's wealth, size, or ability to pay a verdict or judgment. *See Adams Labs., Inc. v. Jacobs Eng'g Co.*, 761 F.2d 1218, 1226 (7th Cir. 1985) (holding reference to the comparative size and financial wealth of the parties was improper). "Courts have held that appealing to the sympathy of jurors through references to the relative wealth of the defendants in contrast to the relative poverty of the plaintiffs is improper and may be cause for reversal. If the wealth and size of a corporation are not at issue, counsel is bound to refrain from making reference to such size and wealth, or bear the risk of an unfavorable appellate reception." *Id.* (quoting *Draper v. Airco, Inc.*, 580 F.2d 91 (3d Cir.1978); *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276 (5th Cir.1975)). CVS argues that any reference should be excluded pursuant to Federal Rules of Evidence 401 and 403, because it is irrelevant to the issues before the Court and is highly prejudicial to CVS. In response, Dr. Mimms argues that it is common knowledge that CVS is a large retailer and CVS's large corporate structure is probative regarding Dr. Mimms' malice claims. Dr. Mimms also argues that he is not limited to "nominal" damages and is entitled to "substantial" damages, and contends that references to the wealth or "deep pockets" of CVS or the comparative wealth between the parties is therefore relevant. *See Glasscock v. Corliss*, 823 N.E.2d 748, 757–58 (Ind. Ct. App. 2005); *Rambo v. Cohen*, 587 N.E.2d at 145-146.

While irrelevant and substantially prejudicial evidence will not be allowed during trial, and the parties should not attempt to elicit such testimony, the Court declines at this stage of litigation to prohibit testimony regarding CVS's corporate parent and wealth without context to the specific

SA-000053

questions being asked at trial.  Accordingly, the Court **denies** this section of CVS's Motion in *Limine*.

9.    **Any reference to law enforcement settlements or civil penalties paid by CVS.**

CVS also asks the Court to exclude any testimony or reference to CVS paying civil penalties or settling with any federal, state or local law enforcement agency.  CVS argues that any reference should be excluded pursuant to Federal Rules of Evidence 401 and 403, because it is irrelevant to the issues before the Court and is unfairly prejudicial to CVS.  In response, Dr. Mimms argues that CVS opened the door to testimony regarding investigations by law enforcement agencies when CVS asserted that specific agencies investigated Dr. Mimms.  Dr. Mimms also contends that the evidence is relevant to his case because any alleged investigation of Dr. Mimms was a result of investigations and lawsuits against CVS.

While irrelevant and substantially prejudicial evidence will not be allowed during trial, and the parties should not attempt to elicit such testimony, the Court declines at this stage of litigation to place a blanket prohibition on a broad category of testimony without any context regarding the investigations.  Accordingly, the Court **denies** this section of CVS's Motion in *Limine*.

10.    **Any reference to the Court's Summary Judgment Order regarding statements made to Seeman.**

CVS moves to exclude any testimony or reference to the Court's Summary Judgment Order, specifically regarding statements made to Seeman.  CVS argues that any reference should be excluded pursuant to Federal Rules of Evidence 401 and 403, because it is irrelevant to the issues before the Court and is highly prejudicial to CVS.  The Court previously found as a matter of law, on reconsideration, that the statements made to Seeman did not meet the defamation standard.  Accordingly, the Court **grants** this section of CVS's Motion in *Limine*.

16

**11.     Any reference to any other cases involving CVS.**

CVS seeks to exclude any testimony or reference to any other cases where CVS is a party. CVS argues that any reference should be excluded pursuant to Federal Rules of Evidence 401 and 403, because it is irrelevant to the issues before the Court and is highly prejudicial to CVS.  Dr. Mimms has not responded with any specificity in opposition to the exclusion of this testimony. The Court knows of no circumstance where reference to other cases involving CVS would be relevant to the issues of this trial.  Accordingly, the Court **grants** this section of CVS's Motion in *Limine*.

**12.     Any reference to witnesses named on CVS's witness list, but not called at trial.**

CVS moves to exclude any testimony or reference to witnesses named on CVS's witness list, but not called at trial.  CVS argues that any reference should be excluded pursuant to Federal Rule of Evidence 403, because it is highly prejudicial to CVS.  While substantially prejudicial evidence will not be allowed during trial, and the parties should not attempt to elicit such testimony, the Court declines at this stage of litigation to prohibit testimony or references to witnesses named on CVS's witness list but not called at trial, without context to the specific questions asked at trial.  Accordingly, the Court **denies** this section of CVS's Motion in *Limine*.

**13.     Any reference to CVS's participation in or statements made during settlement negotiations.**

CVS also seeks to exclude any testimony or reference to its participation in settlement negotiations and its conduct or statements made during those settlement conferences.  CVS argues that any reference should be excluded pursuant to Federal Rules of Evidence 408 and 403, because it is highly prejudicial to CVS.  The Court **grants** this section of CVS's Motion in *Limine*, because evidence of compromise offers and negotiations are typically excluded from trial, except for limited circumstances.  *See* Fed. R. Evid. 408(d) (The court may admit this evidence for another

SA-000055

purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution). Dr. Mimms has stated no specific opposition or argued that an exception exists regarding exclusion of this evidence. Accordingly, this section of CVS's Motion in L*imine* is **granted.**

### 14.     Any reference to CVS's liability insurance.

CVS seeks to exclude any testimony or reference to CVS's liability insurance. CVS argues that any reference should be excluded pursuant to Federal Rule of Evidence. 411. The Court **grants** this section of CVS's Motion in *Limin*e because evidence of liability insurance is typically excluded from trial, with the exception that such evidence may be admissible to prove a witness's bias or prejudice, proving agency, ownership, or control. Dr. Mimms has stated no specific opposition or argued that an exception exists regarding exclusion of this evidence. Accordingly, this section of CVS's Motion in *Limine* is **granted.**

### 15.     Any reference to CVS's Motion in *Limine* and the Court's ruling thereon.

CVS lastly seeks to exclude any testimony or reference to CVS's Motion in *Limine* and the Court's ruling thereon, without first obtaining permission from the Court outside the presence of the jury. CVS has presented no evidentiary basis for excluding such evidence. The Court agrees, however, that reference to the motions in *limine* and the Court's rulings is likely irrelevant and witnesses for both parties should not attempt to elicit such testimony. The parties should be prepared to discuss this topic at the final pretrial conference. This section of CVS's Motion in *Limine* is **taken under advisement** and the Court will issue a ruling at the final pretrial conference on March 1, 2017.

18

## III.    CONCLUSION

For the reasons stated above, the parties' respective Motions in *Limine* ([Filing No. 158](#) and

[Filing No. 175](#)) are **GRANTED in part and DENIED in part**.  An order in *limine* is not a final,

appealable order.  Denial of the motions in *limine* in this Order does not prevent either party from

raising an objection at trial.  During the course of the trial, if either party believes that evidence

being offered is inadmissible or irrelevant, counsel may approach the bench and request a hearing

outside the presence of the jury.


**SO ORDERED.**


Date:  2/27/2017

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jason D. May
jason.may@jasonmaylaw.com

Jonathan W. Garlough
FOLEY & LARDNER LLP
jgarlough@foley.com

Robert H. Griffith
FOLEY & LARDNER LLP
rgriffith@foley.com

Alice McKenzie Morical
HOOVER HULL TURNER LLP
amorical@hooverhullturner.com

Amanda L.B. Mulroony
HOOVER HULL TURNER LLP
amulroony@hooverhullturner.com

Andrew W. Hull
HOOVER HULL TURNER LLP
awhull@hooverhullturner.com

SA-000057

Amanda Elizabeth Fiorini
INDIANA ATTORNEY GENERAL
amanda.fiorini@atg.in.gov

Dennis E. Mullen
INDIANA ATTORNEY GENERAL
dennis.mullen@atg.in.gov

SA-000058

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| ANTHONY MIMMS, M.D., and MIMMS FUNCTIONAL REHABILITATION, P.C., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:15-cv-00970-TWP-MJD |
| CVS PHARMACY, INC. a Rhode Island corporation, | ) ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) ) | |
| INDIANA ATTORNEY GENERAL, MEDICAID FRAUD CONTROL UNIT, | ) ) ) | |
| Interested Parties. | ) ) | |

**ORDER ON DEFENDANT'S SECOND MOTION FOR PARTIAL
RECONSIDERATION AND PLAINTIFF'S MOTION FOR RECONSIDERATION
OF ENTRY ON MOTION FOR PARTIAL RECONSIDERATION**

This matter is before the Court on a second Motion for Partial Reconsideration filed by

Defendant CVS Pharmacy, Inc. ("CVS") (Filing No. 220), as well as Plaintiff Anthony Mimms'

("Dr. Mimms") Motion for Reconsideration of Entry on Motion for Partial Reconsideration (Dkt.

211) (Filing No. 248.)  Dr. Mimms filed this action against CVS alleging defamation, tortious

interference with contractual relationships, and tortious interference with business relationships.

(Filing No. 1-2 at 7-13.)  On January 3, 2017, following cross-motions for summary judgment, the

Court granted in part and denied in part each of the parties' motions.  (Filing No. 143.)  On January

24, 2017, CVS filed a Motion for Partial Reconsideration, which the Court granted in part and

denied in part (Filing No. 211) (the "Order").  CVS now asks the Court to reconsider its Order,

asserting the Court made a mistake of fact when it reconsidered CVS's motion with respect to only

some of Dr. Mimms' witnesses. Thereafter, Dr. Mimms filed a motion asking the Court to reconsider that same Order. For reasons stated below, the Court **DENIES** both parties' motions for reconsideration.

## I.     BACKGROUND

The dispute in this matter surrounds Dr. Mimms' claims that CVS employees at numerous Indiana locations uttered false and defamatory statements to his patients, causing him to suffer embarrassment, damage to himself and his practice, and loss of clients from his pain management practice. The facts of this case are set forth in detail in the Entry on Pending Motions (Filing No. 143) and will therefore only be summarized as needed in this order.

Following cross motions for summary judgment, the Court ruled as follows. CVS's motion for summary judgment was granted with respect to Mimms Functional Rehabilitation's defamation claim. (Filing No. 143 at 10-11.) With respect to Dr. Mimms' defamation claims, the Court specifically concluded, among other things, that the statement to David Seeman that "Dr. Mimms' license has been suspended or revoked" was defamatory *per se* and actual malice existed. In addition, the Court found that the statements to Jerame Smith, Judith Mason, Cynthia and William Miller that "Dr. Mimms is under DEA investigation," the statement to Terry McIntosh that "CVS doesn't fill Dr. Mimms' prescriptions or prescriptions for any other pill mills," the statement to Kim Petro that "CVS no longer fills prescriptions for Dr. Mimms because Dr. Mimms has been to jail," and the statement to Deborah Doyle-Blanton that "Dr. Mimms has been arrested, and if he hasn't been, he soon would be" were defamatory; however, a genuine issue of material fact remained regarding whether any of the defamatory statements were made with actual malice. The Court also denied CVS's qualified privilege claim.

SA-000060

CVS then asked the Court to reconsider its Summary Judgment Entry asserting that the Court misapprehended the applicable law relating to actual malice and qualified privilege. (Filing No. 150.) Dr. Mimms did not file a response and the Court granted in part and denied in part CVS's motion for partial reconsideration. (Filing No. 211.) The Court vacated its Summary Judgment Entry with respect to its finding that Dr. Mimms had not proven actual malice regarding the statements made to Cynthia Miller, William Miller, David Seeman, and Jerame Smith. The Court, however, denied CVS's qualified privilege claim. *Id*. The Court held that the issues remaining for trial were the defamation claim with respect to Terry McIntosh's, Judith Mason's, Kim Petro's and Deborah Doyle-Blanton's respective testimonies that a CVS employee stated: 1) "CVS doesn't fill Dr. Mimms' prescriptions or prescriptions for any other pill mills"; 2) "Dr. Mimms is under DEA investigation"; 3) "Dr. Mimms went to jail"; and 4) "Dr. Mimms has been…or will be arrested" and whether the defamatory statements were made with malice, as well as Dr. Mimms' claims for damages. *Id*. at 10.

CVS now asks the Court to reconsider its Order, contending the Court made a mistake of fact when it incorrectly stated that CVS sought reconsideration regarding only the statements to David Seeman, Jerame Smith, Danny Smith, Cynthia Miller and William Miller when, in fact, CVS sought reconsideration regarding the statements to all of Dr. Mimms' witnesses. (Filing No. 220.) And, Dr. Mimms asks the Court to reconsider it Order, asserting that he presented sufficient evidence to establish that CVS acted with actual malice. (Filing No. 248.)

## II.    **LEGAL STANDARD**

The purpose of a motion to alter or amend judgment under Rule 59(e) is to ask the Court to reconsider matters properly encompassed in a decision on the merits. *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989). A Rule 59(e) motion will be successful only where the movant

SA-000061

clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013); *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). Relief pursuant to a Rule 59(e) motion to alter or amend is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). In this regard, a manifest error is not demonstrated by merely presenting "the disappointment of the losing party." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (a manifest error is "the wholesale disregard, misapplication, or failure to recognize controlling precedent."). Further, a motion to alter or amend a judgment is not an opportunity to "relitigate motions or present arguments, issues, or facts that could and should have been presented earlier." *Brownstone Publ'g, LLC v. AT&T, Inc.*, No. 1:07-CV-1630-SEB, 2009 WL 799546, at *3 (S.D. Ind. Mar. 24, 2009). *See also Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007).

### III.    DISCUSSION

CVS asks the Court to reconsider its Order, contending the Court made a mistake of fact when incorrectly stating that CVS sought reconsideration of the Court's "actual malice" application regarding only the statements to David Seeman, Jerame Smith, Danny Smith, Cynthia Miller and William Miller. CVS argues that it, in fact, sought reconsideration regarding statements to all of Dr. Mimms' witnesses. In response, Dr. Mimms asks that the Court to deny CVS's request, moves the Court to partially reconsider and, further, requests that the Court reinstate its original summary judgment findings.

### A.    Dr. Mimms' Motion to Reinstate Summary Judgment Entry

As an initial matter, in his belated motion for partial reconsideration (Filing No. 248), and in his response (Filing No. 227), Dr. Mimms contends that he presented sufficient evidence to

4

establish that CVS acted with actual malice.  He asserts that he designated evidence of CVS's repeated failures to investigate prior to making defamatory statements, as well as depositions and emails.  Dr. Mimms argues the Court should reinstate its finding that: the statement to David Seeman that "Dr. Mimms' license has been suspended or revoked" was defamatory *per se* and made with actual malice, the statements to Jerame Smith, Judith Mason, Cynthia and William Miller that "Dr. Mimms is under DEA investigation", the statement to Terry McIntosh that "CVS doesn't fill Dr. Mimms' prescriptions or prescriptions for any other pill mills", the statement to Kim Petro that "CVS no longer fills prescriptions for Dr. Mimms because Dr. Mimms has been to jail", and the statement to Deborah Doyle-Blanton that "Dr. Mimms has been arrested, and if he hasn't been, he soon would be" were defamatory, however, a genuine issue of material fact remains regarding whether any of the defamatory statements were made with actual malice.

CVS argues the Court should disregard Dr. Mimms' attempt to seek reconsideration of the Order because Dr. Mimms did not respond to CVS's initial Motion for Reconsideration, nor did he file a motion to reconsider.  CVS is correct that Dr. Mimms' failure to respond to the initial motion for reconsideration and his belated motion to reconsider are cause to disregard his arguments.  However, the Court declines to do so and will examine Dr. Mimms' motion on its merits.

At the summary judgment stage, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007) (citation omitted).  Dr. Mimms bore the burden of establishing actual malice and, although he provided a list of evidence, he failed to assert specific allegations tying that evidence to actual malice.  With respect to the witnesses under

SA-000063

reconsideration, Dr. Mimms only alleged that actual malice exists because the statements made to the witnesses were not true and CVS failed to investigate. However, "mere negligence or failure to investigate is not sufficient to establish malice." *See Nikish Software Corp. v. Manatron, Inc.*, 801 F. Supp. 2d 791, 799 (S.D. Ind. 2011). In addition, Dr. Mimms rehashes old arguments and attempts to relitigate motions, issues, or facts that could and should have been presented earlier. Accordingly, Dr. Mimms' motion for partial reconsideration is **denied**.

**B.     Actual Malice Standard**

Regarding CVS's second request for partial reconsideration, the Court agrees that it made a mistake of fact and, accordingly, the Court will reconsider its Order and apply the actual malice standard to the statements made to Deborah Doyle-Blanton, Terry McIntosh, Kim Petro, and Judith Mason.

"Actual malice exists when 'the defendant publishes a defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Nikish*, 801 F. Supp. 2d at 799 (quoting *Poyser v. Peerless*, 775 N.E.2d 1101, 1107 (Ind. Ct. App. 2002)). Under Indiana law, "[t]o demonstrate reckless disregard, there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication or proof that the false publication was made with a high degree of awareness of their probable falsity." *Journal–Gazette Co., Inc. v. Bandido's Inc.,* 712 N.E.2d 446, 456 (Ind.1999). A critical factor in the actual malice determination is the defendant's state of mind, which "is a subjective fact that may be shown by indirect or circumstantial evidence." *Poyser*, 775 N.E.2d at 1107.

CVS argues, with the exception of the statement made to Mason that "Dr. Mimms was under investigation with the DEA," there is a complete absence of any direct or indirect evidence

SA-000064

regarding the state of mind of the speakers who made statements to Blanton, McIntosh, and Petro

that: 1) "Dr. Mimms has been…or will be arrested"; 2) "CVS doesn't fill Dr. Mimms' prescriptions

or prescriptions for any other pill mills"; and 3) "Dr. Mimms went to jail."

**C.      Statements to Deborah Doyle-Blanton, Terry McIntosh and Kim Petro**

CVS contends that Dr. Mimms' actual malice evidence and arguments regarding

statements to Blanton, McIntosh and Petro were all premised on the theory that CVS should have

investigated prior to making the statements. CVS asserts that this argument fails because "mere

negligence or failure to investigate is not sufficient to establish malice." *See Nikish*, 801 F. Supp.

2d at 799.

In response, Dr. Mimms contends that actual malice exists because, on March 21, 2014, he

participated in a telephone interview with CVS, by way of Joseph Grimes and Nicole Harrington.

After the interview, CVS noted that Dr. Mimms resolved its concerns and was cleared to continue

prescribing controlled substances. CVS also stated it felt "comfortable with [Dr. Mimms']

credentials and background for working in pain management and [CVS is] comfortable with the

policies and procedures in place..." (Filing No. 227 at 8 n.3). Thereafter, Dr. Mimms complained

that CVS employees continued making defamatory statements, prompting Grimes to email Alex

Zweig, a CVS Supervisor, to reinforce appropriate communications when refusing to fill

prescriptions. CVS's store policy states:

> *Important - Under no circumstances* are you to make any disparaging comments
> about the customer's prescriber. Examples of disparaging comments include, but
> are not limited to the following:
>
> - The prescriber is under investigation by the DEA or local police
> - The prescriber is under investigation by CVS
> - The prescriber is operating a pill mill
> - The prescriber is going to lose his or her license
> - The prescriber is going to jail/should go to jail/may go to jail
> - The prescriber is a criminal, about to be arrested, should be arrested, etc.….

SA-000065

CVS00011 and CVS00186 (emphasis in original) (Filing No. 140 at 22).

Dr. Mimms argues, because CVS researched, interviewed and cleared him to continue prescribing controlled substances, CVS knew since March 2014 that Dr. Mimms had never been arrested, he was not under DEA investigation, and he did not operate a pill mill. Dr. Mimms contends, as such, CVS acted with actual malice because CVS had knowledge that the statements were false. Additionally, Dr. Mimms argues that CVS acted with reckless disregard because any subsequent defamatory statement was made with a high degree of awareness of its probable falsity.

In reply, CVS asserts that the Court should not impute knowledge possessed by CVS's corporate officers to CVS's employees. CVS relies on *Woods* and *Conn* when contending that the knowledge possessed by CVS's corporate officers is irrelevant because it does not speak to the state of mind of the speaker. *See Woods v. Evansville Press Co.*, 791 F.2d 480, 487-89 (7th Cir. 1986) (affirming summary judgment to defendant where the record demonstrated that defendant's employee accurately reported a source's comments and there were no "obvious reasons [for the employee] to doubt the veracity of [his source] or the accuracy of his reports") (citations omitted); *Conn v. Paul Harris Stores, Inc.*, 439 N.E.2d 195, 200 (Ind. Ct. App. 1982) (affirming summary judgment to defendant where plaintiff failed to present evidence to support a finding that defendant's qualified "privilege was abused by excessive publication, that the occasion was used for an improper purpose, or that [the employee] had no belief or grounds for belief in the truth of what she said"). CVS also argues that the Court should not impute the knowledge possessed by its corporate officers to its employees because Dr. Mimms failed to raise this argument in his summary judgment briefing.

The Court concludes that Dr. Mimms presented sufficient evidence to raise a question of fact regarding whether CVS employees acted with actual malice when stating: Dr. Mimms is a

SA-000066

"pill mill," "Dr. Mimms went to jail," and "Dr. Mimms has been…or will be arrested," because the statements were made after CVS investigated Dr. Mimms and cleared Dr. Mimms to continue prescribing controlled substances.  The Court also finds that CVS's reliance on *Woods* and *Conn* is misplaced because neither case speaks to the issue of imputing a corporation's knowledge to its employees.  *See Woods*, 791 F.2d 480; *Conn*, 439 N.E.2d 195.  Additionally, the Court declines to reject Dr. Mimms' corporate imputation argument because there is no dispute that CVS waited until the night prior to Dr. Mimms' dispositive motion deadline to produce documents relating to the interview, despite Dr. Mimms' request for production.  Accordingly, CVS's Motion for Summary Judgment is **denied** regarding the statements made to McIntosh, Petro, and Blanton.

### D.    <u>Statements to Judith Mason</u>

CVS also argues that Alexis Fields did not act with actual malice when telling Mason that "Dr. Mimms was under investigation with the DEA".  CVS contends that another CVS employee informed Fields that Dr. Mimms was under DEA investigation and Fields made the statement in an effort to comfort Mason after Mason stated to Fields that Dr. Mimms' office closed without notice.  CVS also argues that there is no designated evidence establishing that Fields knew the statement was false or entertained serious doubts as to the truth of the statement.  *See Journal–Gazette Co.*, 712 N.E.2d at 456.

In response, Dr. Mimms again argues that the Court should impute CVS's corporate knowledge to Fields.  Dr. Mimms also asserts that Fields acted with actual malice, because when questioned about her reasons for stating "Dr. Mimms was under investigation with the DEA," Fields replied:

> Well when [Mason] came in for her prescription, she was upset…because she went…to where [Dr. Mimms'] office used to be, and she told me [Dr. Mimms] just closed up.  She said she didn't have a notice, and she went to every pharmacy down there, and nobody would fill for him.  And I said, well—I just said, *maybe* because he is under investigation from the information that she gave me…

SA-000067

([Filing No. 77-1 at 6](#)) (emphasis added).  After being asked why she correlated Dr. Mimms' office

closing to Dr. Mimms being under investigation, Fields responded: "…I was throwing out there

*maybe* [Dr. Mimms' being under investigation] could be it, *maybe not*… I told [Mason]

*probably*… that he probably, probably because he was under investigation. *I told her I don't*

*know*." *Id*. at 9 (emphasis added).  Dr. Mimms argues that Fields' testimony shows that Fields

was purely guessing that Dr. Mimms was under DEA investigation and, as such, she entertained

serious doubts as to the truth of the statement.

In reply, CVS argues that Fields did not express uncertainty regarding whether Dr. Mimms

was under DEA investigation because Fields confirmed that an employee informed her that Dr.

Mimms was under DEA investigation.  CVS contends that Fields' statement "probably because he

was under investigation" relates only to uncertainty regarding whether Dr. Mimms' office closed

because he was under investigation.  CVS also asserts, even if the Court accepts Dr. Mimms'

characterization of the evidence, Fields' statement is not defamatory because it amounts to a

tentative suggestion.  "For a statement to be actionable, it must be clear that it contains objectively

verifiable fact regarding the plaintiff.... If the speaker is merely expressing his subjective view,

interpretation, or theory, then the statement is not actionable." *Meyer v. Beta Tau House Corp.*,

31 N.E.3d 501, 515 (Ind. Ct. App. 2015) (citations omitted).

As previously stated, the Court concludes that Dr. Mimms presented sufficient evidence to

raise a question of fact regarding whether Fields acted with actual malice because Fields made the

statement after CVS investigated and cleared Dr. Mimms.  Additionally, when viewing the facts

in a light most favorable to Dr. Mimms, and despite CVS's contention that Fields' statement is

merely an unverifiable opinion, the Court finds that Dr. Mimms established a question of fact

regarding whether Fields entertained serious doubts as to the truth of her statement.  The Court

SA-000068

also notes that CVS's "tentative suggestion" argument is without merit because the Court previously found, and CVS did not dispute or seek reconsideration, that when viewed in context and given its plain and natural meaning, the statement to Mason that "Dr. Mimms is under DEA investigation" is defamatory *per se* because even without reference to extrinsic evidence the statement imputes that Dr. Mimms was involved in criminal conduct as well as misconduct in his profession as a physician (Filing No. 143 at 12-13); *see also Meyer*, 31 N.E.3d at 515 (holding, where a statement was susceptible to both defamatory and non-defamatory meanings, a reasonable finder of fact could conclude that a defendant's statements about a plaintiff went beyond mere statements of opinion). Accordingly, CVS's Motion for Summary Judgment is **denied** regarding the statement made to Mason.

## IV.    CONCLUSION

For the aforementioned reasons, CVS's second Motion for Partial Reconsideration (Filing No. 221) is **DENIED**. In addition, Dr. Mimms' Motion for Reconsideration of Entry on Motion for Partial Reconsideration (Dkt. 211), (Filing No. 248), is **DENIED**. The issues remaining for trial are the defamation claim with respect to Terry McIntosh's, Judith Mason's, Kim Petro's and Deborah Doyle-Blanton's respective testimonies that a CVS employee stated: 1) "CVS doesn't fill Dr. Mimms' prescriptions or prescriptions for any other pill mills;" 2) "Dr. Mimms is under DEA investigation;" 3) "Dr. Mimms went to jail;" and 4) "Dr. Mimms has been…or will be arrested" and whether the defamatory statements were made with malice, as well as Dr. Mimms' claims for damages.

**SO ORDERED**.

Date: 3/15/2017

_Tanya Walton Pratt_

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

11

DISTRIBUTION:

Jason D. May
jason.may@jasonmaylaw.com

Stephanie Michelle Payne
ORZESKE & BLACKWELL, P.C
spayne@jasonmaylaw.com

Jonathan W. Garlough
FOLEY & LARDNER LLP
jgarlough@foley.com

Robert H. Griffith
FOLEY & LARDNER LLP
rgriffith@foley.com

Alice McKenzie Morical
HOOVER HULL TURNER LLP
amorical@hooverhullturner.com

Amanda L.B. Mulroony
HOOVER HULL TURNER LLP
amulroony@hooverhullturner.com

Andrew W. Hull
HOOVER HULL TURNER LLP
awhull@hooverhullturner.com

Amanda Elizabeth Fiorini
INDIANA ATTORNEY GENERAL'S OFFICE
Amanda.Fiorini@atg.in.gov

Dennis E. Mullen
INDIANA ATTORNEY GENERAL'S OFFICE
dennis.mullen@atg.in.gov

SA-000070

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ANTHONY MIMMS, M.D.,                       )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   )     Case No. 1:15-cv-00970-TWP-MJD
                                           )
CVS PHARMACY, INC. a Rhode Island          )
corporation,                               )
                                           )
            Defendant.                     )
                                           )

**VERDICT FORM**

1.    Do you find that Dr. Mimms proved that he was defamed by the following statement: On
      or around June 24, 2014, a CVS pharmacist named Tony told Terry McIntosh that "we
      don't fill prescriptions for Dr. Mimms or any other pill mills."?

            Choose one:  ___✓___ Yes _____ No

1a.   If your answer to question No. 1 was "yes", did such statement rise to the level of
      defamation *per se* in that it imputed: (1) criminal conduct; (2) a loathsome disease; (3)
      misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct.

            Choose one:  ___✓___ Yes _____ No

2.    Do you find that Dr. Mimms proved that he was defamed by the following statement: On
      or around October 3, 2014, a CVS pharmacy technician named Alexis told Dr. Mimms's
      patient Judith Mason that "Dr. Mimms was under investigation by the DEA."?

            Choose one:  ___✓___ Yes _____ No

2a.   If your answer to question No. 2 was "yes", did such statement rise to the level of
      defamation *per se* in that it imputed: (1) criminal conduct; (2) a loathsome disease; (3)
      misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct.

            Choose one:  ___✓___ Yes _____ No

3.  Do you find that Dr. Mimms proved that he was defamed by the following statement: a CVS pharmacy technician named Dana told Dr. Mimms's patient Kim Petro that CVS would not fill a prescription because "we cannot fill for Dr. Mimms anymore because he went to jail[.]"?

    Choose one:  ✓ Yes _____ No

3a. If your answer to question No. 3 was "yes", did such statement rise to the level of defamation *per se* in that it imputed: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct.

    Choose one:  ✓ Yes _____ No

4.  Do you find that Dr. Mimms proved that he was defamed by the following statement:  In March 2015, either a CVS pharmacist or a pharmacy technician who was male, Caucasian, with dark hair and lean build named Eric or Ryan told Dr. Mimms's patient Deborah Doyle-Blanton that Dr. Mimms "has been arrested, and if he hasn't, he's about to be."?

    Choose one:  ✓ Yes _____ No

4a. If your answer to question No. 4 was "yes", did such statement rise to the level of defamation *per se* in that it imputed: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct.

    Choose one:  ✓ Yes _____ No

5.  We find that Dr. Mimms is entitled to the following amount of damages (if any) for the statement(s) identified in Nos. 1 through 4 above for which we have answered "yes".

    1. $ 275,000
    2. $ 200,000
    3. $ 275,000
    4. $ 275,000

Date: 3/31/2017     Foreperson: ▮▮▮▮▮▮▮▮

2

SA-000072

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ANTHONY MIMMS, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-00970-TWP-MJD |
| | ) | |
| CVS PHARMACY, INC. a Rhode Island corporation, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>FINAL JUDGMENT</u>**

Beginning March 27, 2016 and ending March 31, 2016, the Court tried this case before a jury. The case concluded with a verdict of compensatory damages for the Plaintiff.

Therefore, it is **ORDERED, ADJUDGED and DECREED** that final judgment is awarded to the Plaintiff, by way of his Complaint, and against the Defendants, as follows:

| | |
|---|---|
| Verdict Question No. 1: | $275,000.00 |
| Verdict Question No. 2: | $200,000.00 |
| Verdict Question No. 3: | $275,000.00 |
| Verdict Question No. 4: | $275,000.00 |

The total final judgment awarded to Plaintiff is $1,025,000.00.

**SO ORDERED**.

Date: 3/31/2017

_Tanya Walton Pratt_

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Laura A. Briggs, Clerk

BY: _____
Deputy Clerk, U. S. District Court

DISTRIBUTION:

Jason D. May
jason.may@jasonmaylaw.com

Stephanie Michelle Payne
ORZESKE & BLACKWELL PC
spayne@jasonmaylaw.com

Jonathan W. Garlough
FOLEY & LARDNER LLP
jgarlough@foley.com

Robert H. Griffith
FOLEY & LARDNER LLP
rgriffith@foley.com

Alice McKenzie Morical
HOOVER HULL TURNER LLP
amorical@hooverhullturner.com

Amanda L.B. Mulroony
HOOVER HULL TURNER LLP
amulroony@hooverhullturner.com

Andrew W. Hull
HOOVER HULL TURNER LLP
awhull@hooverhullturner.com

Amanda Elizabeth Fiorini
INDIANA ATTORNEY GENERAL
Amanda.Fiorini@atg.in.gov

Dennis E. Mullen
INDIANA ATTORNEY GENERAL
dennis.mullen@atg.in.gov

SA-000074